A11A0047. GEORGIA FARM BUREAU MUTUAL INSURANCE COMPANY v. NORTH et al.
A11A0134. NORTH et al. v. DEBOSE et al.
(714 SE2d 428)

ADAMS, Judge.

The underlying facts in the uninsured/underinsured motorist (UM) case are undisputed. Plaintiff/appellee Ricky North was injured in a collision between an automobile and the motorcycle he was riding in August 2007. He and his wife subsequently brought suit against the driver of the vehicle, and additionally sought to recover $250,000 in UM coverage under North's motor vehicle insurance policy and $1,000,000 in UM coverage under an umbrella insurance policy issued to him by appellant Georgia Farm Bureau Mutual Insurance Company (GFB). The Norths subsequently filed a motion for partial summary judgment against GFB on the issue of their entitlement to UM benefits under the umbrella policy, and GFB filed a response and an opposing motion for summary judgment, contending that the Norths were not entitled to UM coverage under the umbrella policy because Ricky North had rejected UM coverage in writing at the time he applied for the policy. The trial court granted the Norths' motion for partial summary judgment and denied GFB's motion. GFB then filed the present appeal, which was docketed in this Court as Case No. A11A0047. The Norths also filed a cross-appeal, which was docketed in this Court as Case No. A11A0134, challenging portions of the trial court's factual findings, and arguing that summary judgment was proper here for the additional reason that GFB placed an impermissible condition on their ability to obtain uninsured motorist coverage. We have consolidated the main appeal and cross-appeal, and now affirm the judgment of the trial court.

The starting point for our analysis is OCGA § 33-7-11 (a).[1] In pertinent part, subsection (a) (1) of the relevant version of that

---

[1] The umbrella policy was issued in March 2003, and OCGA § 33-7-11, as amended in

statute provided:

> No automobile liability policy or motor vehicle liability policy shall be issued or delivered in this state . . . unless it contains an endorsement or provisions undertaking to pay the insured all sums which said insured shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle, within limits exclusive of interests and costs which at the option of the insured shall be:
>
> (A) Not less than $25,000.00 because of bodily injury to or death of one person in any one accident, . . . ; or
>
> (B) Equal to the limits of liability because of bodily injury to or death of one person in any one accident . . . if those limits of liability exceed the limits of liability set forth in subparagraph (A) of this paragraph of this Code section. In any event, the insured may affirmatively choose uninsured motorist limits in an amount less than the limits of liability. . . .

Pursuant to subsection (a) (3) "[t]he coverage required under paragraph (1) of this subsection shall not be applicable where any insured named in the policy shall reject the coverage in writing."

The application North completed at the time the umbrella policy was issued contained the following:

> VIII. UNINSURED/UNDER INSURED MOTORISTS COVERAGE:
>
> A. DO YOU DESIRE UNINSURED/UNDER INSURED MOTORIST COVERAGE:
>
> ☐ YES. IF YES, THE UM-UI LIMITS FOR THE UNDERLYING POLICY MUST EQUAL THE BI AND PD LIMITS OF THE UNDERLYING AUTOMOBILE LIABILITY POLICY.
>
> ☐ NO. IF NO, THE UNDERSIGNED CERTIFY THAT IN CONSIDERATION OF PREMIUM CHARGED, I DO NOT DESIRE THE UMBRELLA LIABILITY POLICY TO

2001 (effective to policies issued on or after January 1, 2002), applies here. Ga. L. 2001, p. 1228, § 3. The statute was subsequently amended to exclude umbrella or excess liability policies "unless affirmatively provided for in such policies or in a policy endorsement." Ga. L. 2008, p. 1192, § 1.

APPLY TO UNINSURED/UNDER INSURED MOTOR-
ISTS COVERAGE.

Ricky North checked the "NO" box.

On appeal, GFB argues the trial court erred by granting the Norths' motion for summary judgment and denying its motion because the governing statute only imposes one requirement in order for there to be a valid rejection of UM coverage under OCGA § 33-7-11 (a) (3) — that such rejection be in writing — and that requirement was met here. See *Nat. Union Fire Ins. Co. v. Johnson*, 183 Ga. App. 38, 39 (357 SE2d 859) (1987) (rejection must be in writing but no further formal requisites pertain to the rejection of UM coverage). Further, GFB argues "[a] written rejection pursuant to OCGA § 33-7-11 (a) (3) eliminates the necessity to offer optional coverages under OCGA § 33-7-11 (a) (1)." However, in our view GFB has mis-framed the issue because the assumption underlying its argument is that the rejection of coverage in this case was binding and proper, which is, in fact, the issue to be decided here. We find that it was not, and thus agree with the trial court that the Norths were entitled to UM coverage up to the limits of liability of the umbrella policy.

Before we begin our analysis, we note the following overarching considerations. "Under Georgia law, an insurance company is free to fix the terms of its policies as it sees fit, so long as they are not contrary to the law. However, provisions in insurance policies that conflict with the plain terms of Georgia's insurance statutes are illegal and of no effect." (Punctuation and footnote omitted.) *Abrohams v. Atlantic Mut. Ins. Agency*, 282 Ga. App. 176, 181 (638 SE2d 330) (2006). As to uninsured motorist coverage, Georgia law requires that an insured under an automobile or motor vehicle liability coverage policy be given the option of rejecting uninsured/under-insured motorist coverage, selecting minimum coverage or selecting coverage up to the limits of liability under the policy, OCGA § 33-7-11 (a), and GFB acknowledges that those requirements applied to umbrella policies as well as primary policies at the time the umbrella policy was issued here. *Abrohams*, 282 Ga. App. at 181. However, it is equally true, as GFB argues and the Norths acknowledge, that there are no formal, statutory requirements or appellate court decisions governing how and in what manner the insurer must offer the available options for uninsured motorist coverage, just as there are no formal requirements governing the manner in which such coverage must be rejected, beyond requiring that rejections must be in writing, and it is for the legislature and not this Court to further specify how these requirements are to be met. *Nat. Union Fire Ins. Co. v. Johnson*, 183 Ga. App. at 39. Further, in deciding issues

relating to uninsured motorist coverage, we must remember the legislative intent behind the uninsured motorist statute:

> The purpose of uninsured motorist legislation is to require some provision for first-party insurance coverage to facilitate indemnification for injuries to a person who is legally entitled to recover damages from an uninsured motorist, and thereby to protect innocent victims from the negligence of irresponsible drivers. Uninsured motorist statutes are remedial in nature and must be broadly construed to accomplish the legislative purpose.

(Citations and punctuation omitted.) *Smith v. Commercial Union Assurance Co.*, 246 Ga. 50, 51 (268 SE2d 632) (1980).

With those considerations in mind, we now turn to the facts of this case. It appears undisputed that North was not informed about the coverage options available to him under his umbrella policy, although it is true, as GFB also argues, that it does appear that North knew about the *possibility* of obtaining uninsured motorist coverage under the umbrella policy, since the *possibility* of obtaining such coverage was indicated on the application for the umbrella policy. Although in our view the better policy would require the insurer to inform the insured of all his or her uninsured coverage options before the insured makes any decision regarding uninsured motorist coverage so that the insured can make an informed election or rejection of such coverage, in this case it is unnecessary for us to decide whether GFB's failure to inform North of his uninsured motorist coverage options invalidated his rejection of such coverage because the facts here show that in addition to not informing North about his coverage options, an impermissible condition was imposed on North's ability to obtain such coverage as well. Specifically, that condition appeared beside the "yes" option on the application, notifying North that the only way he could obtain uninsured motorist coverage under his umbrella policy would be to increase his uninsured coverage limits in his primary liability insurance policies to equal the bodily injury and property damage limits of those policies.[2] Indeed, GFB's underwriter testified that North would have

---

[2] The trial court in this case found that North was offered UM coverage equal to the liability limits of the policy, but was not offered the minimum limits of UM coverage. Although the basis of the trial court's finding is not clear from the order on partial summary judgment, we do note that at the hearing on the motions, counsel for the Norths made the following statement about the language beside the "yes" box on the umbrella policy application. " 'If yes, the UMUI limit' — being uninsured motorist limits — 'with an underlying policy must equal the bodily injury and property damage limits of the underlying policy.' " Although the actual language on the application reads in full as follows: "Yes. If yes, the UM-UI limits for

only "qualified" for uninsured motorist coverage under the umbrella policy if this condition was met.[3] Thus, while the application may have informed North of the possibility of obtaining uninsured motorist coverage under his umbrella policy, it misinformed him that he could only obtain that coverage if his uninsured motorist coverage in his primary automobile liability policies equaled his coverage limits under those policies. This clearly contravened the requirement that existed at the time the umbrella policy was issued here that umbrella policies that provided automobile and liability coverage be treated the same as primary automobile and motor vehicle liability insurance policies with respect to the statutory requirements governing uninsured motorist coverage. Moreover, although GFB's underwriter testified that once North rejected uninsured motorist coverage under his umbrella policy he was not entitled to such coverage no matter what subsequent action he took in regard to the primary policies, it is also evident that because of the way in which the application was worded, once North chose not to meet the condition specified under the "yes" option, the only other *option* was to reject uninsured coverage, which he did. Just as an insurer generally cannot carve out exclusions when extending uninsured motorist coverage, see, e.g., *Wagner v. Nationwide Mut. Fire Ins. Co.*, 288 Ga. App. 132 (653 SE2d 526) (2007), we do not believe that an insurer can impose conditions to obtaining such coverage which the law does not allow. Compare *Crouch v. Federated Mut. Ins. Co.*, 257 Ga. App. 604, 606 (571 SE2d 574) (2002) ("*As long as the mandatory UM minimum is met and optional UM coverage is offered pursuant to statutory requirements*, a combination of sublimits and interests . . . contravenes neither the law nor public policy.") (Punctuation omitted; emphasis supplied). The statute clearly provided the UM coverage options from which the *insured* could elect, and those options were never available to the insured in this case because he did not increase his uninsured motorist coverage limits in his primary liability automobile insurance policies to equal the amount

---

the underlying policy must equal the BI and PD limits of *the underlying automobile liability policy*," we can apprehend how the trial court, in light of counsel's statement, may have concluded that North was in fact "offered" UM coverage equal to the liability limits of the umbrella policy. However, and despite the fact that this language could also be interpreted to mean that North was only given the option of selecting uninsured motorist coverage under his umbrella policy up to the limits of liability of the underlying, or primary, automobile policies, it does appear undisputed that this language does not reference the umbrella policy at all, but rather imposes the requirement that in order to obtain uninsured motorist coverage under his umbrella policy, North had to have, or obtain, uninsured motorist coverage in his underlying, or primary, automobile liability policies with limits equal to the bodily injury and property damage coverage provided in those primary policies.

[3] North's uninsured limits in his five liability policies was less than the specified coverage limits in those policies.

of his liability coverage limits in those policies. Under the circumstances of this case, we find that the rejection of UM coverage, although in writing as required by the statute, was not binding, and the Norths were entitled to UM coverage in the amount of the umbrella policy's $1,000,000 liability limits. *Abrohams*, 282 Ga. App. at 180 (1). Thus, the trial court did not err by granting the Norths' motion for partial summary judgment, and denying GFB's motion.

*Judgments affirmed. Ellington, C. J., Barnes, P. J., Miller, P. J., and Phipps, P. J., concur. Doyle and Blackwell, JJ., dissent.*

BLACKWELL, Judge, dissenting.

Because the majority undertakes today to rewrite the clear and unambiguous terms of a statute, I respectfully dissent. The relevant statute is, as the majority explains, the version of OCGA § 33-7-11 that was effective in March 2003, when the umbrella policy at issue in this case was issued. Paragraph (a) (1) of that version of the statute provides that, when an insurer issues or delivers an automobile or motor vehicle liability policy, it must make provision for uninsured motorist coverage and permit the insured to choose the limits of such coverage from among the options set forth in the statute:

> No automobile liability policy or motor vehicle liability policy shall be issued or delivered in this state . . . unless it contains an endorsement or provisions undertaking to pay the insured all sums which said insured shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle, within limits exclusive of interests and costs which at the option of the insured shall be:
>
> > (A) Not less than $25,000.00 because of bodily injury to or death of one person in any one accident . . . ; or
> > (B) Equal to the limits of liability because of bodily injury to or death of one person in any one accident . . . which is contained in the insured's personal coverage in the automobile liability policy or motor vehicle liability policy issued by the insurer to the insured if those limits of liability exceed the limits of liability set forth in subparagraph (A) of this paragraph of this Code section. In any event, the insured may affirmatively choose uninsured motorist limits in an amount less than the limits of liability.

OCGA § 33-7-11 (a) (1) (2002). But there is an exception to this requirement. Paragraph (a) (3) of the statute provides that "[t]he coverage required under paragraph (1) of this subsection shall not be applicable where any insured named in the policy shall reject the coverage in writing." OCGA § 33-7-11 (a) (3) (2002).

Reading paragraphs (a) (1) and (a) (3) together, the statutory scheme is rather evident: When an insurer chooses to write an automobile or motor vehicle liability policy of insurance, the insurer must provide uninsured motorist coverage and permit the insured to choose the limits of this coverage from among the statutory options at the time the insurer "issue[s] or deliver[s]" the policy *unless* the insured already has rejected uninsured motorist coverage in writing, in which event the insurer owes him neither coverage nor a choice about the limits of such coverage. The words of the statute are clear and unambiguous; they mean exactly what they say, nothing more, nothing less. Here, it is undisputed that Ricky North rejected uninsured motorist coverage in writing before Georgia Farm Bureau issued or delivered the umbrella policy at issue. That fact alone ought to be enough to resolve this case.

The majority, however, concludes that North did not effectively reject uninsured motorist coverage because, the majority says, Georgia Farm Bureau affirmatively misled North about his entitlement to such coverage.[4] According to the majority, the written application for insurance that North signed is misleading because it

---

[4] Although it decides this case on another ground, the majority comments on North's contention that Georgia Farm Bureau was required to inform him of the limits of coverage from which he could choose if he did not decline uninsured motorist coverage altogether and that, absent such a disclosure, his rejection of coverage is ineffective. The majority says that, in its view, "the better policy would require the insurer to inform the insured of all his or her uninsured coverage options before the insured makes any decision regarding uninsured motorist coverage so that the insured can make an informed election or rejection of such coverage." Requiring such a disclosure might well be good policy, as the majority says, but we cannot properly accept North's contention because we are supposed to concern ourselves with law and leave questions of policy to the General Assembly. See *Robinson v. Boyd*, 288 Ga. 53, 56 (2) (701 SE2d 165) (2010) (under our constitutional separation of powers, the General Assembly may rewrite an unambiguous statute if it so chooses, but the courts cannot); *Commonwealth Investment Co. v. Frye*, 219 Ga. 498, 499 (134 SE2d 39) (1963) (the General Assembly, not the courts, has the power to decide public policy and implement that policy by enacting laws). And the applicable statute in this case says nothing at all about disclosures. We have said before that the statute only requires that a rejection of coverage be in writing, and "[i]f the legislature had intended any further formal requisites for the rejection of uninsured motorist benefits, we must presume it would have specified them." *Nat. Union Fire Ins. Co. v. Johnson*, 183 Ga. App. 38, 39 (357 SE2d 859) (1987). Although North urges that the failure of Georgia Farm Bureau to disclose information to North about his statutory options vitiates his rejection of uninsured motorist coverage, for this Court to so hold would require us to "rewrite [the] statute[ ] to promote policies that are not expressed in that legislation," see *Anthony v. American Gen. Financial Svcs.*, 287 Ga. 448, 450 (1) (a) (697 SE2d 166) (2010), something that we ought not do.

suggests that uninsured motorist coverage is available under an umbrella policy only to the extent that the insured carries uninsured motorist coverage in his underlying, primary insurance policies with limits equal to the limits of coverage for bodily injury and property damage in the primary policies. That is, of course, exactly what the application says, but there is nothing misleading about it. Indeed, it is undisputed that, when North applied for an umbrella policy, Georgia Farm Bureau had adopted underwriting guidelines that permitted an umbrella policy with uninsured motorist coverage to issue only if the insured had uninsured motorist coverage in his primary insurance policies with the required limits.

The majority seems to think that such an underwriting guideline itself violates OCGA § 33-7-11 (a). But nothing in the statute requires anyone to write a policy of insurance; it only requires an insurer, when it does write a covered policy, to provide uninsured motorist coverage unless the coverage is rejected. To be sure, an insurer cannot write a policy but refuse to write it as the law requires, refusing, for instance, to provide the statutory coverage simply because the insured does not meet some underwriting requirement that the insurer has adopted when the insured has not rejected coverage. But the insurer *can* decide to issue no policy at all when an insured does not qualify for uninsured motorist coverage under its underwriting guidelines and has not rejected the coverage in writing. See *Trinity Outdoor v. Central Mut. Ins. Co.*, 285 Ga. 583, 584 (1) (679 SE2d 10) (2009) (insurers may agree to insure against certain risks while declining to insure against others). And that is precisely what Georgia Farm Bureau would have done in this case, if North had not rejected uninsured motorist coverage and did not qualify for it under the underwriting guidelines. In such an event, according to the undisputed testimony of a Georgia Farm Bureau agent, the underwriters "would have rejected [the application] and sent it back." Nothing in the clear and unambiguous provisions of OCGA § 33-7-11 forbids the insurer to refuse to issue a policy in such circumstances. Because we ought not undertake by judicial fiat to require an insurer to write a policy that it does not wish to write and that no statute requires it to write, I respectfully dissent. See *Anthony*, 287 Ga. at 450 (1) (a).

I am authorized to state that Judge Doyle joins in this dissent.

DECIDED JULY 14, 2011 —
RECONSIDERATION DENIED JULY 29, 2011 — ■

*James, Bates, Pope & Spivey, Lee M. Gillis, Jr., Duke R. Groover*, for Georgia Farm Bureau Mutual Insurance Company.

*Wallace Miller III, Charles W. Watwood, Jr.*, for North.

*Bridges, Ormand & Faenza, Alvin L. Bridges, Jr.*, for Debose.

*Joseph D. Perrotta*, for Travelers Home and Marine Insurance Company.

