STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

16-146

OSWALDA RANGEL, ET AL.

VERSUS

FELIPE VEGA-ORTIZ, ET AL.

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 20146386
HONORABLE MARILYN C. CASTLE, DISTRICT JUDGE

**********

MARC T. AMY
JUDGE

**********

Court composed of Sylvia R. Cooks, John D. Saunders, and Marc T. Amy, Judges.

AFFIRMED.

Ivan A. Orihuela
Riguer Silva, LLC
3213 Florida Avenue, Suite C
Kenner, LA   70065
(504) 466-7507
COUNSEL FOR PLAINTIFFS/APPELLANTS:
    Oswalda Rangel
    Leila Medina
    Hayley Medina
    Joselyn Medina

Sean P. Rabalais
Casler, Bordelon & Lawler
11550 Newcastle Avenue, Suite 200
Baton Rouge, LA   70816
(337) 347-0096
COUNSEL FOR DEFENDANT/APPELLEE:
    Progressive Mountain Insurance Company

**AMY, Judge.**

This matter concerns an automobile accident that resulted in the death of Cesar Medina. Individually and on behalf of Mr. Medina's three minor children, Mr. Medina's wife filed suit against the driver of the other vehicle, the insurer of the other vehicle, and the insurer of Mr. Medina's vehicle. The insurer of Mr. Medina's vehicle filed a motion for summary judgment on the basis that their policy did not include uninsured/underinsured motorist coverage. The plaintiff filed no opposition to that motion. The trial court granted the motion for summary judgment, dismissing the insurer. The trial court subsequently denied the plaintiff's motion for new trial. The plaintiff appeals. For the following reasons, we affirm.

## Factual and Procedural Background

The allegations giving rise to this litigation stem from an automobile accident that caused the death of Cesar Medina. Mr. Medina's spouse, Oswalda Rangel, filed this matter on her own behalf and on behalf of her minor children, Leila Medina, Hayley Medina, and Joselyn Medina, naming as defendants the driver of the other vehicle, Felipe Vega-Ortiz; the owner of Mr. Vega's vehicle, Luz Alvarez; the insurer of Mr. Vega's vehicle, Affirmative Insurance Company; and the insurer of the vehicle driven by Mr. Medina, Progressive Mountain Insurance Company.

Thereafter, Progressive filed a motion for summary judgment seeking to be dismissed from the litigation on the basis that it did not provide uninsured/underinsured motorist coverage on the date of the accident. Therein, Progressive asserted that the vehicle driven by Mr. Medina was owned by Blanca

Medina-Ramon.[1] Progressive contended that it had issued a policy of insurance on the vehicle to Ms. Medina-Ramon in the State of Georgia and that Ms. Medina-Ramon rejected UM coverage, as evidenced by an attached waiver form. The record indicates that Ms. Rangel neither filed an opposition to the motion for summary judgment nor appeared at the hearing.[2] The trial court granted the motion and dismissed Progressive from the litigation.

Thereafter, Ms. Rangel filed a motion for new trial, arguing that the trial court failed to make a choice-of-law determination and, for the first time, asserted that the subject UM rejection was not valid. The trial court denied the motion for new trial without a hearing, noting that Ms. Rangel did not file an opposition to the motion for summary judgment or appear at the hearing and that Georgia law governed.[3]

Ms. Rangel appeals, asserting that:

The Trial Court erred when it granted Progressive's motion when:

i. The Trial Court made no conflict of laws determination prior to granting Progressive's motion,

ii. The Trial Court applied Georgia law without conducting a proper conflict of law analysis,

iii. The relevant UM rejection is invalid under Louisiana law,

---

[1] The surname of the insured is referred to as "Medina-Ramon," "Medina," and "Ramon." We use the form included on the declarations sheet of the policy.

[2] While the judgment indicates that Ms. Rangel's attorney was present at the hearing, both the minutes and the transcript indicate that her attorney did not appear.

[3] The trial court inscribed the rule to show cause submitted with Ms. Rangel's motion for new trial as follows:

Denied. The plaintiffs failed to file an opposition to the motion for summary judgment or make any appearance. The insurance contract in question was confected in the State of Georgia and the law of Georgia governs the validity of the UM rejection which was executed in Georgia.

  iv.  The relevant UM rejection is invalid under Georgia law, and

  v.  Progressive failed to meet its burden of showing that it is entitled to summary judgment.

## Discussion

*Summary Judgment*

Although Ms. Rangel breaks her assignment of error into several parts, all of her arguments concern the propriety of the trial court's grant of summary judgment in favor of Progressive. "A motion for summary judgment is a procedural device used when there is no genuine issue of material fact for all or part of the relief prayed for by a litigant." *Reynolds v. Bordelon*, 14-2371, pp. 2-3 (La. 6/30/15), 172 So.3d 607, 610. The motion for summary judgment shall be granted when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. La.Code Civ.P. art. 966(B)(2).[4] Further,

> The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.

La.Code Civ.P. art. 966(C)(2). We note that, even when no opposition is filed to a motion for summary judgment, the court must still determine whether the movant has met its burden of proof on the motion. *National Collegiate Student Loan Trust*

---

[4] The Legislature enacted 2015 La.Acts No. 422 which amended La.Code Civ.P. art. 966, effective January 1, 2016. As the hearing on this matter occurred on September 28, 2015, we reference the version of the statute in effect at that time.

*2003-1 v. Thomas*, 48,627 (La.App. 2 Cir. 11/20/13), 129 So.3d 1231. *See also Caceres v. United Auto. Ins. Co.*, 14-0418 (La.App. 4 Cir. 11/5/14), 154 So.3d 584.

On appeal, summary judgments are reviewed de novo, using the same criteria that the trial court uses to determine whether summary judgment is appropriate, i.e., whether there is any genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law. *Reynolds*, 172 So.3d 607.

*Conflicts of Law*

Ms. Rangel first re-urges the argument she raised in the motion for new trial and suggests that the trial court erred in failing to apply Louisiana law to the executed UM waiver. She contends that, if the trial court had considered pertinent statutory[5] and jurisprudential[6] law, the Georgia waiver could not be viewed as evidencing a clear and unmistakable rejection of mandatory UM coverage.

---

[5] Entitled "Uninsured motorist coverage[,]" La.R.S. 22:1295 provides, in part, that:

The following provisions shall govern the issuance of uninsured motorist coverage in this state:
(1)(a)(i) No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle designed for use on public highways and required to be registered in this state or as provided in this Section unless coverage is provided therein or supplemental thereto, in not less than the limits of bodily injury liability provided by the policy, under provisions filed with and approved by the commissioner of insurance, for the protection of persons insured thereunder who are legally entitled to recover nonpunitive damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness, or disease, including death resulting therefrom; however, the coverage required under this Section is not applicable when any insured named in the policy either rejects coverage, selects lower limits, or selects economic-only coverage, in the manner provided in Item (1)(a)(ii) of this Section. In no event shall the policy limits of an uninsured motorist policy be less than the minimum liability limits required under R.S. 32:900, unless economic-only coverage is selected as authorized in this Section. Such coverage need not be provided in or supplemental to a renewal, reinstatement, or substitute policy when the named insured has rejected the coverage or selected lower limits in connection with a policy previously issued to him by the same insurer or any of its affiliates. The coverage provided under this Section may exclude coverage for punitive or exemplary damages by the terms of the policy or contract. Insurers may also make available, at a reduced premium, the coverage provided under this Section with an exclusion for all noneconomic loss. This coverage shall be known as "economic-only" uninsured motorist coverage. Noneconomic loss

4

Louisiana Revised Statutes 22:1295 (formerly contained within La.R.S. 22:1406) requires that all automobile liability policies delivered or issued for delivery in Louisiana, include UM coverage unless the insured expressly rejects that coverage or chooses a lower limit by designated form. Recognizing that the statute is applicable to policies "delivered or issued for delivery in this state," the supreme court determined in *Champagne v. Ward*, 03-3211 (La. 1/19/05), 893 So.2d 773, that the provision is not necessarily applicable to a foreign insurance policy in a multistate case, even though the accident occurs in Louisiana and involves a Louisiana resident. The supreme court instead explained that, "even when the accident occurs in Louisiana and involves a Louisiana resident[,]" the

means any loss other than economic loss and includes but is not limited to pain, suffering, inconvenience, mental anguish, and other noneconomic damages otherwise recoverable under the laws of this state.

(ii) Such rejection, selection of lower limits, or selection of economic-only coverage shall be made only on a form prescribed by the commissioner of insurance. The prescribed form shall be provided by the insurer and signed by the named insured or his legal representative. The form signed by the named insured or his legal representative which initially rejects such coverage, selects lower limits, or selects economic-only coverage shall be conclusively presumed to become a part of the policy or contract when issued and delivered, irrespective of whether physically attached thereto. A properly completed and signed form creates a rebuttable presumption that the insured knowingly rejected coverage, selected a lower limit, or selected economic-only coverage. The form signed by the insured or his legal representative which initially rejects coverage, selects lower limits, or selects economic-only coverage shall remain valid for the life of the policy and shall not require the completion of a new selection form when a renewal, reinstatement, substitute, or amended policy is issued to the same named insured by the same insurer or any of its affiliates. An insured may change the original uninsured motorist selection or rejection on a policy at any time during the life of the policy by submitting a new uninsured motorist selection form to the insurer on the form prescribed by the commissioner of insurance. Any changes to an existing policy, regardless of whether these changes create new coverage, except changes in the limits of liability, do not create a new policy and do not require the completion of new uninsured motorist selection forms. For the purpose of this Section, a new policy shall mean an original contract of insurance which an insured enters into through the completion of an application on the form required by the insurer.

[6] Citing *Dyess v. American National Property and Casualty Co.*, 03-1971 (La.App. 1 Cir. 6/25/04), 886 So.2d 448, *writ denied*, 04-1858 (La. 10/29/04), 885 So.2d 592, Ms. Rangel chiefly questions the form's inclusion of an electronic "X" (rather than the insured's initials) by the choice to "reject Uninsured Motorist Coverage entirely and understand that my policy does not include this coverage."

Louisiana Civil Code's foundational, choice of law provisions supply "the appropriate methodology for determining which state's law applies to the interpretation of UM contracts in multistate cases[.]" *Id.* at 775.

In this regard, La.Civ.Code art. 3515 sets forth the general and residual conflict of law rules, stating that:

> Except as otherwise provided in this Book, an issue in a case having contacts with other states is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue.
>
> That state is determined by evaluating the strength and pertinence of the relevant policies of all involved states in the light of: (1) the relationship of each state to the parties and the dispute; and (2) the policies and needs of the interstate and international systems, including the policies of upholding the justified expectations of parties and of minimizing the adverse consequences that might follow from subjecting a party to the law of more than one state.

Similarly, La.Civ.Code art. 3537, which addresses conflict of laws as relevant to conventional obligations, states that:

> Except as otherwise provided in this Title, an issue of conventional obligations is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue.
>
> That state is determined by evaluating the strength and pertinence of the relevant policies of the involved states in the light of: (1) the pertinent contacts of each state to the parties and the transaction, including the place of negotiation, formation, and performance of the contract, the location of the object of the contract, and the place of domicile, habitual residence, or business of the parties; (2) the nature, type, and purpose of the contract; and (3) the policies referred to in Article 3515, as well as the policies of facilitating the orderly planning of transactions, of promoting multistate commercial intercourse, and of protecting one party from undue imposition by the other.

The identified objective of both Articles is to "identify the state whose policies would be most seriously impaired if its laws were not applied to the issue at hand." *Champagne*, 893 So.2d at 786. Those policies are identified by

6

"evaluating the strength and pertinence of the relevant policies of the involved states in light of the factors set forth in those Civil Code articles." *Id.*

Referring to the competing public policies and interests of the involved states as "profound," the supreme court stated that the purpose of Louisiana's "UM legislation is to promote full recovery for innocent tort victims."[7] *Champagne*, 893 So.2d at 788. Conversely, the foreign insurer, in this case Georgia, "has an interest in the regulation of its insurance industry and in the contractual obligations that are inherent parts thereof." *Id.* In this regard, the supreme court remarked that "[t]he integrity of the contract is a substantial and real interest. The fact that Congress has allowed fifty states to have their own uniform system of regulations governing insurance strongly suggests this is a legitimate public purpose." *Id.* After identification of the competing state policies, we turn to *de novo* consideration of the pertinent contacts with the respective states. *Id.*

Reference to the subject policy submitted by Progressive in support of its motion for summary judgment indicates that it was issued in Georgia, is identified as a "Georgia Auto Policy[,]" and was issued to Ms. Medina-Ramon at a Georgia address. The policy further indicates the covered vehicles, including the 1999

_____

[7] It further identified various factor's supporting Louisiana's interest in promoting full recovery for innocent accident victims as:

> (1) there are economic interests involved, which include costs of medical care (which are more likely to be paid if there is sufficient insurance); (2) there is significant involvement of the facilities of the Department of Public Safety and Corrections and the judicial system; and (3) the issuing states of the insurance policy often have credit and reduction provisions in their UM coverage, thereby reducing limits and serving to prevent full recovery by the innocent accident victims. *Zuviceh v. Nationwide Ins. Co.*, 2000-0773 (La.App. 1st Cir.5/11/01), 786 So.2d 340, 345, *writ denied*, 2001-2141 (La.11/09/01), 801 So.2d 373. Any credit reducing the UM limits by the amount of liability insurance of the adverse driver is clearly contrary to the underinsured motorist protection required by Louisiana's statute. *Id.* at 345-346, quoting William Shelby McKenzie and H. Alston Johnson, III, Insurance Law and Practice § 119, p. 293, in Louisiana Civil Law Treatise (2nd ed.1996).

*Champagne*, 893 So.2d at 788.

Cadillac involved in the subject accident, are all garaged in Georgia. The policy lists the "Garaging ZIP Code" as "31082" and further includes that same ZIP code in Ms. Medina-Ramon's listed Sandersville, Georgia address. The policy declarations page reports that "Uninsured Motorist" was "Rejected" for each of the listed vehicles, including the vehicle driven by Mr. Medina in the accident. Additionally, the executed UM form is attached, bearing an "X" by the option indicating that: "I reject Uninsured Motorist Coverage entirely and understand that my policy will not include this coverage."

On the other hand, and reflective of Ms. Rangel's lack of submission in opposition to the motion for summary judgment, the record is sparse as to Louisiana's contacts with the dispute at hand. Certainly, it is significant that the accident occurred in Lafayette Parish. However, Mr. Medina's presence in Louisiana at the time of the accident is vague on the record before the court. While Ms. Rangel suggests in her brief to this court, as she did in her motion for new trial, that Mr. Medina was a Louisiana resident, she did not allege that important fact in the petition[8] nor did she submit evidence as to that fact at the hearing on the motion for summary judgment. Progressive has not conceded that fact in the filings before this court. Even upon consideration of the accident report that Ms. Rangel submitted at the time of her motion for new trial, the factual allegation of Mr. Medina's residency remains unclear. While the report lists a Scott, Louisiana address for Mr. Medina, it contrarily provides that he was driving under the authority of a Georgia driver's license at the time of the accident. The designated record before this court contains no additional evidence in this regard.

---

[8] Ms. Rangel did, however, allege in the petition that she and her children, as well as the driver of the other vehicle involved in the accident, Mr. Felipe Vega-Ortiz, were Louisiana residents.

Based on Louisiana's and Georgia's respective relationships to the issue, and as revealed through the limited facts before us, we find no error in a determination that Georgia is "the state whose policies would be most seriously impaired if its laws were not applied to that issue." *See* La.Civ.Code art. 3537. Simply, the Georgia insurance policy was issued to an insured at a Georgia address on a vehicle garaged in Georgia. That vehicle's presence in Louisiana, as well as that of its driver, Mr. Medina, remains unclear on the record before us. Although the evidence is not sufficiently clear to find that Mr. Medina was only "transitorily within the borders of Louisiana[,]" as was the situation of the plaintiff in *Champagne*, 893 So.2d at 789, the slim record before us does not evidence otherwise. It does, however, establish multiple contacts with Georgia. Thus, based on the presented evidence, we conclude that Georgia's "policies will be most seriously impaired if its law is not applied to the insurance policy." [9] *Id.*

Accordingly, we find that the trial court did not err in finding that Georgia law is applicable in this case. Ms. Rangel's assignment of error in this regard is without merit.

*Waiver of Uninsured/Underinsured Motorist Coverage*

Ms. Rangel also argues that the trial court erred in granting summary judgment because, even if Georgia law was applicable, the waiver of uninsured/underinsured motorist insurance was not valid. Ms. Rangel contends

---

[9] While we make this determination regarding Georgia's greater interest, it is worth pointing out that both Louisiana and Georgia require a signed rejection of uninsured motorist coverage to prove that coverage was declined; the issue herein is only which formalities are required for such a rejection form to be valid. *Rios v. Pierce*, 14-730, p. 4 (La.App. 4 Cir. 1/7/15), 158 So.3d 856, 859 (wherein the fourth circuit remarked that, while there was a difference of the required formalities, there was "no true conflict of policies" in a case involving Mississippi as the foreign insurer where both states required a signed rejection form in order to prove that coverage was declined), *writ denied*, 15-256 (La. 4/17/15), 168 So.3d 404. *See also* Ga. Code Ann. § 33-7-11.

that Georgia law requires that the insured be given the option of rejecting uninsured/underinsured motorist coverage; obtaining a lower amount of uninsured/underinsured motorist coverage, or obtaining uninsured/underinsured motorist coverage at the policy limits. She argues that Ms. Medina-Ramon, Progressive's insured, had "no option but to reject UM coverage[,]" as the selection rejection coverage was "pre-filled."

The relevant Georgia statute addressing rejection of uninsured/underinsured motorist coverage is Ga. Code Ann. § 33-7-11. That statute states, in relevant part, that:

> (3) The coverage required under paragraph (1) of this subsection shall not be applicable where any insured named in the policy shall reject the coverage in writing. The coverage required under paragraph (1) of this subsection excludes umbrella or excess liability policies unless affirmatively provided for in such policies or in a policy endorsement. The coverage need not be provided in or supplemental to a renewal policy where the named insured had rejected the coverage in connection with a policy previously issued to said insured by the same insurer. The amount of coverage need not be increased in a renewal policy from the amount shown on the declarations page for coverage existing prior to July 1, 2001. The amount of coverage need not be increased from the amounts shown on the declarations page on renewal once coverage is issued.

Thus, pursuant to Ga. Code Ann. § 33-7-11, Georgia law requires that an insured be given the option of "rejecting uninsured/underinsured motorist coverage, selecting minimum coverage or selecting coverage up to the limits of liability under the policy[.]" *Georgia Farm Bureau Mut. Ins. Co. v. North*, 311 Ga.App. 281, 283, 714 S.E.2d 428, 431 (2011).

> However, it is equally true . . . that there are no formal, statutory requirements or appellate court decisions governing how and in what manner the insurer must offer the available options for uninsured motorist coverage, just as there are no formal requirements governing the manner in which such coverage must be rejected, beyond requiring that rejections must be in writing[.]

10

*Id.* The burden of showing that the insured made an affirmative choice to reject UM coverage lies on the insurer. *McGraw v. IDS Prop. & Cas. Ins. Co.*, 323 Ga.App. 408, 744 S.E.2d 891 (2013).

Here, although Ms. Rangel asserts that Progressive failed to meet its burden of proof with regard to a valid waiver of UM coverage, our review of the record indicates that Progressive submitted a copy of the insurance policy into evidence, including a waiver of UM coverage signed and dated by its insured. Progressive also included an affidavit from one of its employees attesting that "Uninsured/Underinsured motorist coverage was rejected by valid waiver signed by named insured Blanca Medina." Ms. Rangel does not contest that Ms. Medina-Ramon signed the waiver.

After review, we conclude that this evidence is sufficient such that Progressive has met its burden of proving that Ms. Medina-Ramon waived UM coverage as contemplated by Georgia law. *See Lambert v. Alfa Gen. Ins. Co.*, 291 Ga.App. 57, 660 S.E.2d 889 (2008). Although Ms. Rangel argues before this court that the waiver form is invalid because the "rejected" option was "pre-filled," thus depriving Ms. Medina-Ramon from a real choice in the matter, she has not offered any evidence to support her assertion that Ms. Medina-Ramon was forced to decline that coverage. Further, we find no merit to Ms. Rangel's citation to *North*, 714 S.E.2d 428, in support of this argument. Therein, the Georgia Court of Appeals determined that the form provided by the insurer to its insured only had the option to select coverage at the policy limits or to reject coverage altogether. *Id.* Noting that the options provided by the insurer did not include all of the options from which the insured was allowed to select by law, the Georgia Court of Appeals found that it was impermissible for the insurer to carve out exclusions which the

11

law did not allow. Accordingly, the court found that the rejection of UM coverage was invalid. *Id.* Our review of the waiver form submitted into evidence reveals that all of the options available to the insured by law are included therein.

Thus, we conclude that, although the trial court's reasons for judgment were brief, the trial court appropriately granted the motion for summary judgment, dismissing Progressive from the litigation. This assignment of error is without merit.

## DECREE

For the foregoing reasons, the trial court's grant of the motion for summary judgment in favor of Progressive Mountain Insurance Company is affirmed. Costs of this appeal are assessed to the plaintiff, Oswalda Rangel, individually and on behalf of Leila Medina, Hayley Medina, and Joselyn Medina.

**AFFIRMED.**