**FOURTH DIVISION
DILLARD, P. J.,
MERCIER, J., and SENIOR JUDGE FULLER.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**October 29, 2025**

# In the Court of Appeals of Georgia

A25A1226. WILLIAMS et al. v. REDDICK.

MERCIER, Judge.

Following an automobile collision, Michael and Natasha Williams (collectively the "Appellants") filed the underlying lawsuit against Robert Reddick. Reddick filed a motion for summary judgment arguing that summary judgment was appropriate due to the Appellants' limited liability release under OCGA § 33-24-41.1. The trial court granted the motion, and this appeal followed. The Appellants argue that the trial court erred by granting summary judgment when the release contained an exception for other insurance. As there remains an outstanding issue of material fact regarding an uninsured motorist ("UM") insurance policy, we agree and reverse.

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). "On appeal from the grant or denial of a motion for summary judgment, we review the evidence de novo, and all reasonable conclusions and inferences drawn from the evidence are construed in the light most favorable to the nonmovant." *McGraw v. IDS Prop. & Cas. Ins.*, 323 Ga. App. 408, 408 (744 SE2d 891) (2013).

So viewed, the evidence shows the following. On September 18, 2015, Michael was driving a tractor trailer owned by his employer, Equity Group ("Equity"), when he and Reddick had a vehicle collision. Michael filed a worker's compensation claim with Equity's worker's compensation insurance company, Ace American Insurance Company ("Ace"), and later settled the claim.

The Appellants filed the underlying renewal action against Reddick alleging that Reddick's negligent driving caused the collision. Michael asserted claims for medical expenses, pain and suffering and lost wages, and Natasha asserted a loss of consortium claim. The Appellants executed a limited liability release pursuant to OCGA § 33-24-41.1,[1] wherein they released Progressive Drive Insurance, Reddick's auto-liability

---

[1] OCGA § 33-24-41.1 provides relevantly that:

insurance carrier, and Reddick "except to the extent other insurance coverage is available which covers the claim or claims of the [the Appellants] against

---

(a) In any instance where a claim arising out of a motor vehicle accident is covered by two or more insurance carriers, one such carrier may tender, and the claimant may accept, the limits of such policy; and, in the event of multiple claimants, the settling carrier may tender, and the claimants may accept, the limits of the policy pursuant to a written agreement between or among the claimants. Such claimant or claimants may execute a limited release applicable to the settling carrier and its insured based on injuries to such claimants including, without limitation, claims for loss of consortium or loss of services asserted by any person.

(b) The limited release provided for in subsection (a) of this Code section shall:

(1) Release the settling carrier from all liability from any claims of the claimant or claimants based on injuries to such claimant or claimants; and

(2) Release the insured tort-feasor covered by the policy of the settling carrier from all personal liability from any and all claims arising from the occurrence on which the claim is based except to the extent other insurance coverage is available which covers such claim or claims.

[Reddick][.]" The Appellants also settled with their own auto-liability insurance company, Auto-Owners Insurance.

Michael, as an employee of Equity, filed a UM claim with Ace under Equity's liability policy. Ace has not rejected Michael's UM claim, but it has not participated in the underlying lawsuit and has failed to respond to discovery requests.

Reddick filed his motion for summary judgment, pointing to the release and arguing that the Appellants had exhausted all possible insurance coverage. In his brief, he contended that "ACE American has indicated that there is no uninsured motorist coverage on the Georgia policy and has not participated in this case." He attached a one-page, undated document to his brief, titled "Uninsured Motorists/Underinsured Motorist Coverage Summary" ("Summary"), which purports to be a document from Ace's liability policy insuring Equity. The Summary states, relevantly, that: "You have rejected coverage in the following states and no Limit of Insurance is provided for vehicles principally garaged or registered in these states: . . . GA[.]"

In their sole enumerated error, the Appellants argue that the trial court erred by concluding that the limited liability release precluded recovery because the Ace insurance policy may provide UM coverage.

Generally, insurance policies issued or delivered in Georgia must contain provisions for UM coverage, which at the option of the insured shall be not less than $25,000 per person, or equal to the policy's bodily injury liability insurance coverage, if higher than $25,000 per person. OCGA § 33-7-11 (a) (1). However, a policy is not required to provide UM insurance *if* the named insured rejects the UM coverage in writing. OCGA § 33-7-11 (a) (3).

> The purpose of uninsured motorist legislation is to require some provision for first-party insurance coverage to facilitate indemnification for injuries to a person who is legally entitled to recover damages from an uninsured motorist, and thereby to protect innocent victims from the negligence of irresponsible drivers. Uninsured motorist statutes are remedial in nature and must be broadly construed to accomplish the legislative purpose.

*Hinton v. Interstate Guar. Ins. Co.*, 267 Ga. 516, 517-518 (480 SE2d 842) (1997) (citation and punctuation omitted).

Reddick contends that Ace's insurance policy excludes UM coverage. As such, the only point at issue is whether ACE obtained a valid rejection of UM coverage from Equity.

5

As the movant putting forth the affirmative defense of the release and the absence of UM coverage, the burden lies with Reddick to show that the insured made an affirmative written choice to reject UM coverage. See *Ferguson v. Spraggins*, 371 Ga. App. 727, 727 (902 SE2d 708) (2024) ("A defendant moving for summary judgment based on an affirmative defense, such as release, OCGA § 9-11-8 (c), may not rely upon an absence of evidence in the record disproving the affirmative defense. Instead, the defendant must present evidence which establishes the prima facie affirmative defense.") (citation and punctuation omitted).

The Appellants contend that the Summary is insufficient evidence to show that Equity made an affirmative written choice to reject UM coverage. We agree. While there are no formal requirements governing the manner in which an insured may reject UM insurance, the statute requires that the rejection be in writing.[2] See OCGA § 33-7-11 (a) (3); *Ga. Farm Bureau Mut. Ins. Co. v. North*, 311 Ga. App. 281, 283 (714 SE2d 428) (2011) ("there are no formal requirements governing the manner in which [UM] coverage must be rejected, beyond requiring that rejections must be in writing").

_____

[2] Of note, "unlike an insured's rejection of *any* UM coverage, an insured's choice of UM coverage in an amount less than liability limits need not be made in writing." *Jones v. Ga. Farm Bureau Mutual Ins. Co.*, 367 Ga. App. 35, 38 (1) (885 SE2d 13) (2023) (emphasis in original).

Further, the statute requires that the written rejection must be done by "any insured named in the policy[.]" OCGA § 33-7-11 (a) (3). Here, the named insured is Equity,[3] and the record does not contain Equity's insurance application or anything that could constitute Equity's affirmative choice in writing to reject UM coverage. See *Mcgraw*, 323 Ga. App. at 410-411 (insurance company failed to meet burden of showing that insured made an affirmative choice of less UM coverage by merely pointing to policy declaration's page). The one page, undated, Summary attached to Reddick's brief shows merely Ace's assertion that Equity rejected UM coverage. Compare *Lambert v. Alfa Gen. Ins. Corp.*, 291 Ga. App. 57, 61 (660 SE2d 889) (2008) (written statement signed by insured requesting to change his UM insurance amount was sufficient evidence of insured's affirmative election to reduce his UM coverage).

An insurance policy's exclusion of UM coverage, absent a written rejection, does not excuse an insurance carrier from complying with OCGA § 33-7-11. "Under Georgia law, an insurance company is free to fix the terms of its policies as it sees fit, so long as they are not contrary to the law. However, provisions in insurance policies that conflict with the plain terms of Georgia's insurance statutes are illegal and of no

---

[3] The parties do not dispute that Equity had an insurance policy with Ace at the time of the accident, but the complete insurance policy is not in the appellate record.

effect." *North*, 311 Ga. App. at 283 (citation and punctuation omitted). If Ace failed to obtain a written rejection of UM coverage, Ace's UM exclusion would conflict with OCGA § 33-7-11 and be void. *St. Paul Fire and Marine Ins. Co. v. Hughes*, 321 Ga. App. 738, 742 (742 SE2d 762) (2013) (where insurer failed to put forth a "written rejection of UM benefits for the Policy, the Policy's UM exclusion conflicts with the plain terms of OCGA § 33–7–11 and was therefore void"); see also *Doe v. Rampley*, 256 Ga. 575, 577 (1) (351 SE2d 205) (1987) ("The acceptance of a policy with a non-conforming uninsured motorist provision is not such a waiver as the statute contemplates.").

We are not persuaded that the Summary, alone, is evidence of the affirmative written choice made by Equity to reject UM insurance coverage. See *Assaf v. Cincinnati Ins Co.*, 327 Ga. App. 475, 477-482 (1) (759 SE2d 557) (2014) (issue of material fact as to whether insured rejected UM coverage under umbrella policy when the insurance application contained a checked box rejecting UM coverage and the insured's purported signature, but insured testified that he did not sign the application or check the rejection box, and, instead, contended that a dual insurance agent had signed his name); *National Union Fire Ins. v. Johnson*, 183 Ga. App. 38, 39 (357 SE2d

8

859) (1987) ("letter from the insured instructing the issuing agent to make immediate changes to the automobile liability policy served as an effective rejection of uninsured motorist coverage"); *Blalock v. Southern Ins. Co.*, 180 Ga. App. 319, 319 (349 SE2d 32) (1986) (insurance application that contained a checked reject box for UM coverage and the insured's signature was sufficient evidence to show a written rejection of UM insurance); *Whatley v. Universal Sec. Ins. Co.*, 177 Ga. App. 424, 425 (339 SE2d 398) (1986) (same); *Am. Liberty Ins. Co. v. Sanders*, 120 Ga. App. 1, 2 (2) (169 SE2d 342) (1969) ("The rejection of uninsured motorist coverage in a written application for a public liability insurance policy is sufficient"). As Reddick has failed to show an absence of other insurance, specifically there is no evidence currently before us that Equity rejected UM coverage in writing, we find that the trial court erred by granting summary judgment to Reddick and we reverse.

*Judgment reversed. Dillard, P. J., and Senior Judge C. Andrew Fuller concur.*