LANDRIEU, J., concurs with reasons.
MAX N. TOBIAS, JR., Judge.
11 State Farm Mutual Automobile Insurance Company (“State Farm”), the defendant/ appellant, complains of a judgment of the trial court that found coverage for an accident that occurred in August 2009 in New Orleans, Louisiana. After reviewing the record and applicable law of both Louisiana and Florida, we find no error by the trial court and affirm the judgment.
The facts of this case are not in dispute. State Farm issued policy number 628 2111-F03-59A to co-defendant Thomas Sapp (“Sapp”) for his 2007 BMW automobile with the effective dates of 3 December 2007 through 3 June 2008. The policy was a Florida policy issued and delivered to Sapp in Florida. The policy was renewed thereafter for consecutive six-month terms. State Farm claims that the policy last renewed in December 2008 for a term of 3 December 2008 through 3 June 2009. At some point in time, Sapp moved to New Orleans; the record indicates that State Farm was aware of Sapp’s move.
On 15 August 2009, Sapp was involved in an automobile accident with plaintiff/appel-lee, Roderick Lee (“Lee”). Lee sued Sapp and State Farm seeking 12damages for his personal injuries incurred in the accident as the result of Sapp’s alleged negligence. State Farm denied coverage, arguing that the policy was not renewed on 3 June 2009.
Initially, State Farm contended that it sent a cancellation notice to Sapp because he had moved from Florida to Louisiana. Years later, State Farm now concedes that a cancellation notice was not sent, but asserts that the policy “died a natural death” due to non-payment of premiums after 3 February 2009; Sapp contends that he continued to make his monthly payments. In any event, it is undisputed that no notice for any reason was sent by State Farm to Sapp.
Both Lee and Sapp filed motions for partial summary judgment, arguing that the State Farm policy was in effect on the day of the .accident because State Farm did not send the legally required notice of cancellation or for non-renewal. State Farm filed its own motion for summary judgment contending that no coverage existed at the time of the accident. The trial court agreed with Lee and Sapp, and granted their motions, while denying the motion from State Farm.
In its reasons for judgment, the trial court found that the laws of both Louisiana and Florida required that the insurer send the insured a written notice of cancellation of its intention not to renew coverage. State Farm timely filed this appeal, arguing that the trial court erred because no notice is required when a lapse in coverage occurs for non-payment of premiums.
An appellate court reviews a judgment granting a partial summary judgment utilizing the de novo standard of review. Kimpton Hotel & Restaurant Group, Inc. v. Liberty Mut. Fire Ins. Co., 07-1118, 07-1209, 07-1310, p. 3 (La.App. 4 Cir. 12/19/07), 974 So.2d 72, 75. An appellate court uses the same criteria that govern the district court’s consideration of whether summary judgment is appropriate. Ramos v. Tulane Univ. of La., 06-0487, p. 3 (La.App. 4 Cir. 1/31/07), 951 So.2d 1267, 1269, citing Smith v. Our Lady of the Lake *63 Hosp., Inc., 93-2512, p. 26 (La.7/05/94), 639 So.2d 730, 750. Thus, a motion for summary judgment will be granted “if the pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits, if any, show that there is no genuine issue of material fact, and that the mover is entitled to summary judgment as a matter of law.” La. C.C.P. art. 966 B. The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of actions such as this. La. C.C.P. art. 966 A(2).
Summary judgment is particularly appropriate in the context of insurance coverage issues. As the courts have consistently held, the “[i]nterpretation of an insurance policy ordinarily involves a legal question that can be properly resolved by a motion for summary judgment.” Bernard v. Ellis, 11-2377, p. 9 (La.7/2/12), 111 So.3d 995, 1002; Bonin v. Westport Ins. Corp., 05-0886, p. 4 (La.5/17/06), 930 So.2d 906, 910.
In any case involving a potential choice of law issue, a court’s first task is to determine which jurisdictions have meaningful contacts to the dispute. La. C.C. art. 3537 states:
Except as otherwise provided in this Title, an issue of conventional obligations is governed by the law of the Estate whose policies would be most seriously impaired if its law were not applied to that issue.
That state is determined by evaluating the strength and pertinence of the relevant policies of the involved states in the light of: (1) the pertinent contacts of each state to the parties and the transaction, including the place of negotiation, formation, and performance of the contract, the location of the object of the contract, and the place of domicile, habitual residence, or business of the parties; (2) the nature; type, and purpose of the contract; and. (3) the policies referred to in Article 3515,[1] as well as the policies of facilitating the orderly planning of transactions, of promoting multi-state commercial intercourse, and of protecting one party from undue imposition by the other.
Here, two jurisdictions have an interest in having their laws applied to this dispute—Louisiana and Florida. Next, a court must determine whether any meaningful difference exists between the. substantive laws of the jurisdictions. If the governing law of each jurisdiction is identical, or so similar that the same result would be reached under either law, a “false conflict” exists and, thus, no need exists to determine which state’s law applies. Arabie v. Citgo Petroleum Corp., 10-2605, p. 5 (La.3/13/12), 89 So.3d 307, 327, citing Eugene F. Scoles, et al., Conflict of Laws 28, n.16 (4th ed.2004)(“[f]alse conflicts also include cases in |ñwhich the laws of the involved states are identical, or different, but produce identical results”); Zimko v. American Cyanamid, 03-658, pp. 20-21 (La.App. 4 Cir. 6/8/05), 905 So.2d 465, 481-82, writ denied, 05-2102 (La.3/17/06), 925 So.2d 538.
*64 In Deane v. McGee, 261 La. 686, 696-697, 260 So.2d 669, 673 (1972), the plaintiffs, residents of Florida, were injured in an accident while visiting Louisiana. At the time of the accident, the plaintiffs were guest passengers in a vehicle owned and being driven by their son-in-law. The collision occurred as a result of the negligence of 17-year-old Roger McGee, who was driving an automobile owned by his father. The McGees were uninsured. The insurance policy at issue was issued to the plaintiffs in Florida. The Court, applying the doctrine of “lex loci contractus,” concluded that Florida law applied and stated:
Generally the nature, validity and interpretation of an insurance contract is governed by the law of the place where made unless the parties clearly appear to have had some other place in view. Metropolitan Life Ins. Co. v. Haack, 50 F.Supp. 55 (W.D.La.1943). Thus it has been held that where a Mississippi automobile owner applied for an automobile liability policy which was executed and issued from the insurer’s office in Mississippi, the contract contained in the policy was a Mississippi contract and the law of that State entered into it and became a part of it. Wheat v. White, 38 F.Supp. 796 (E.D.La.1941); see also City of Shreveport v. New York Life Ins. Co., 141 La. 360, 75 So. 80 (1917); Shiff v. Louisiana State Ins. Co., 6 Mart. (N.S.) 629 (La.1828); Lowery v. Zorn, 157 So. 826 (La.App.1934); Dainow, Variations on a Theme in Conflict of Laws, 24 La.L.Rev. 157 (1964).
IfiWe hold that Florida law governs in this case because the contract was issued and delivered in Florida. However, we find that the contract of insurance issued by State Farm to Sapp overrides Florida law.[2]
In Rodriguez v. Security National Insurance Co., Inc., 138 So.3d 520 (Fla. 3d DCA 2014), the court stated:
[F.S.A.] Section 627.728(4)(a) provides in pertinent part:
No insurer shall fail to renew a policy unless it mails or delivers to the first-named insured, at the address shown in the policy, and to the first-named insured’s insurance agent at her or his business address, at least 45 days’ advance notice of its intention not to renew; and the reasons for refusal to renew must accompany such notice. This subsection does not apply:
1. If the insurer has manifested its willingness to renew; or
2. In case of nonpayment of premium
... Unless a written explanation for refusal to renew accompanies the notice of intention not to renew, the policy shall remain in full force and effect. [Emphasis supplied.]
While this section clearly states that it does not apply when the insurer declines to renew the policy for the nonpayment of premiums, we turn to the wording of the State Farm policy at issue, which constitutes the law between the parties. Under Florida law, “the rights and obligations of the parties under an 17insurance policy are governed by contract law since they arose out of an insurance contract.” Lumbermens Mut. Cas. Co. v. August, 530 So.2d 293, 295 (Fla.1988).
State Farm’s policy issued to Sapp states in pertinent part:
*65 We, State Farm Mutual Automobile Insurance Company, agree to insure you according to the terms of this policy based:
1. on your payment of premium for the coverages you chose; and
2. in reliance on your statements in these declarations.
You agree, by acceptance of this policy that:
1. the statements in these declarations are your statements and are true; and
2. we insure you on the basis your statements are true; and
3. this policy contains all of the agreements between you and us or any of our agents. [Emphasis in original.]
State Farm argues that it only agreed to insure Sapp if he paid his premiums; because he failed to pay his premiums after February 2009, his insurance lapsed and no notice was necessary. Sapp, however, directs our attention to other language in the policy:
5. RENEWAL.... A notice of our intention to not renew will be mailed or delivered to your last known address at least 45 days before the end of the current policy period. The mailing of the notice by United States postal proof of mailing or certified or registered mailing shall be sufficient proof of notice.
We find that this policy provision gives the insured more rights than those provided for under Florida law as it makes no exception for the non-payment of premiums. As stated by the Florida Supreme Court in Green v. Life & Health of America, 704 So.2d 1386, 1390-1391 (Fla.1998):
It is well settled that, as a general rule, “parties are free to ‘contract-out’ or ‘contract around’ state or federal law with regard to an insurance contract, so long as there is nothing void as to public policy or statutory law about such a contract.” King v. Allstate Ins. Co., 906 F.2d 1537, 1540 (11th Cir.1999); see also Foster v. Jones, 349 So.2d 795, 799-800 (Fla. 2d DCA 1977)(same); Baxter v. Royal Indemnity Co., 285 So.2d 652, 655 (Fla. 1st DCA 1973) (same); Trak Microwave Corp. v. Medaris Management, Inc., 236 So.2d 189, 193 (Fla. 4th DCA 1970) (same).
Because the State Farm policy makes no exceptions regarding notice of non-renewal of the automobile policy issued to Sapp, we find that coverage existed at the time of the accident, 15 August 2009.[3]
Based on the foregoing, we affirm the judgment of the trial court.

AFFIRMED.

. La. C.C. art. 3515 provides:
Except as otherwise provided in this Book,' an issue in a case having contacts with other states is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue.
That state is determined by evaluating the strength and pertinence of the relevant policies of all involved states in the light of: (1) the relationship of each state to the parties and the dispute; and (2) the policies and needs of the interstate and international systems, including the policies of upholding the justified expectations of parties and of minimizing the adverse consequences that might follow from subjecting a party to the law of more than one state.

. We note that the result would be the same even if we applied Louisiana law because we are relying on the terms and conditions of the insurance policy itself.

. "A fundamental tenet of contract law is that parties are free to contract, even when one side negotiates a harsh bargain.” Barakat v. Broward Cnty. Hous. Auth., 771 So.2d 1193, 1195 (Fla. 4th DCA 2000); accord Posner v. Posner, 257 So.2d 530, 535 (Fla.1972) (“Freedom to contract includes freedom to make a bad bargain.”).