LILJEBERG, J.
1 plaintiffs appeal the trial court’s judgment, granting the motion for summary judgment filed by one of the defendant insurers and dismissing it from this lawsuit. For the following reasons, we affirm.
FACTS AND PROCEDURAL HISTORY
This case arises from a motor vehicle accident that occurred in Jefferson Parish on September 30, 2010. Plaintiffs, Rafael Garces-Rodriguez and Julio Aonso, contend that they were traveling westbound on Interstate 10 in a 1996 Kenworth truck owned by Jose Paez, when their vehicle was struck from behind by a 2004 Toyota Tacoma owned and operated by Christopher Anderson.
On September 28, 2012, plaintiffs filed this lawsuit seeking compensation for their personal injuries and other damages, naming GEICO Indemnity Company and Progressive County Mutual Insurance Company (“Progressive”) as defendants. In their petition, plaintiffs assert that at the time of the accident, both Mr. Garces-Rodriguez and Mr. Paez were insured by Progressive. They claim that them Progressive automobile insurance policies provided uninsured/underinsured motorist (“UM”) coverage for the damages they sustained.
On January 7, 2015, Progressive filed a motion for summary judgment, seeking dismissal of plaintiffs’ claims against it on the grounds that UM coverage was rejected for both of the relevant Progressive insurance policies. It argues that both Progressive policies were issued in Texas and that Texas law should apply in this matter. Progressive asserts that under Texas law, the rejection of UM coverage forms signed by Mr. Garces-Rodriguez and Mr. Paez are both valid and exclude coverage for plaintiffs’ UM claims.
Plaintiffs filed a memorandum in opposition to Progressive’s motion for summary judgment, asserting that Louisiana law should apply in this matter and that the UM rejection forms signed by Mr. Garces-Rodriguez and Mr. Paez are ^invalid under Louisiana law. They argue that the Progressive policies provide UM coverage for plaintiffs’ damages because there was no valid rejection of UM coverage.
Progressive’s motion for summary judgment came before the trial court for a hearing on March 2, 2015. At the conclusion of the hearing, the trial court granted the parties additional time to submit mem-oranda and took the matter under advisement. On April 20, 2015, the trial court signed a judgment granting Progressive’s motion for summary judgment.[1] In its rea *391 sons for judgment, the trial court found that Louisiana law applies in this matter, and that the UM coverage rejection forms signed by Mr. Garces-Rodriguez and Mr. Paez were sufficient to effect a valid rejection of UM coverage under Louisiana law. Plaintiffs appeal.
LAW AND DISCUSSION
On appeal, plaintiffs assert that the trial court erred by granting Progressive’s motion for summary judgment, because the two relevant UM rejection forms are invalid under both Louisiana and Texas law. Plaintiffs argue that Louisiana law should apply, because Louisiana’s interests in this matter are more substantial and outweigh those of Texas. Plaintiffs contend that the only interest Texas has in this case is that the insurance policies in question were issued in Texas. They list several alleged interests of Louisiana in this case, including that: 1) the accident occurred in Louisiana; 2) the collision occurred between Louisiana residents; 3) plaintiffs received all of their medical treatment in | ^Louisiana; and 4) the two vehicles involved in the accident were registered and garaged in Louisiana.
Next, plaintiffs argue that the UM rejection forms are invalid under Louisiana law, because: 1) Neither of the UM selection forms complied with the form promulgated by the insurance commissioner as required by Louisiana law; 2) there are no initials on the UM selection forms indicating the selections of the insureds; 3) the names of the insureds and the name of the insurance company are not printed on the UM selection forms; 4) none of the exhibits attached to Progressive’s motion for summary judgment were certified copies of the insurance policy documents; and 5) Progressive failed to show that the relevant UM selection forms were part of the two Progressive liability policies at issue.
Progressive responds that the trial court properly granted summary judgment in its favor. However, Progressive maintains that Texas law applies in this matter. It claims that Texas has a greater interest than Louisiana in enforcing its policies, because: 1) the vehicles insured under the policies were both garaged in Texas; 2) the policies were issued in Texas; and 3) the insureds resided in Florida, not Louisiana. They further contend that the UM rejection forms are both valid and enforceable, pursuant to Texas law.
Appellate courts review the grant or denial of a motion for summary judgment de novo, using the same criteria that govern the trial court’s consideration of whether summary judgment is appropriate. Breaux v. Fresh Start Properties, *392 L.L.C., 11-262 (La.App. 5 Cir. 11/29/11), 78 So.3d 849, 852. On review of a motion for summary judgment, we must determine if there is any genuine issue of material fact and whether the mover is entitled to judgment as a matter of law. Id. Whether an insurance policy provides or precludes coverage, as a matter of law, can be resolved within the framework of a motion for summary judgment. Gautreaux v. Dufrene, 04-970 (La.App. 5 Cir. 1/11/05), 894 So.2d 385.
La. R.S. 22:1295 (formerly designated as La. R.S. 22:680) requires that all automobile liability policies delivered or issued for delivery in Louisiana include UM coverage unless the insured expressly rejects such coverage or chooses a lower limit. In Champagne v. Ward, 03-3211 (La. 1/19/05), 893 So.2d 773, the Louisiana Supreme Court recognized that Louisiana’s UM statute is applicable to policies “delivered or issued for delivery in this state” and held that Louisiana law does not automatically apply to the interpretation of a foreign UM insurance policy in a multi-state case where an accident occurs in Louisiana and involves a Louisiana resident. Rather, the Court stated that in a multistate case, the appropriate starting point is to determine if there is a difference between Louisiana’s UM law and the UM law of the foreign state. If so, the Court should conduct a choice of law analysis, as set forth in La. C.C. arts. 3515 and 3537, to determine which state’s law applies to the interpretation of the UM policy, Champagne, 893 So.2d at 786.
La. C.C. art. 3515, found within the general provisions governing conflict of laws in the Louisiana Civil Code, provides as follows:
Except as otherwise provided in this Book, an issue in a case having contacts with other states is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue.
That state is determined by evaluating the strength and pertinence of the relevant policies of all involved states in light of: 1) the relationship of each state to the parties and the dispute; and 2) the policies and needs of the interstate and international systems, including the policies of upholding the justified expectations of parties and of minimizing the adverse consequences that might follow from subjecting a party to the law of more than one state.
La. C.C. art. 3537, regarding conflict of laws within conventional obligations, provides:
Except as otherwise provided in this Title, an issue of | r,conventional obligations is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue.
That state is determined by evaluating the strength and pertinence of the relevant policies of the involved states in light of: 1) the pertinent contacts of each state to the parties and the transaction, including the place of negotiation, formation, and performance of the contract, the location of the object of the contract, and the place of domicile, habitual residence, or business of the parties; 2) the nature, type, and purpose of the contract; and 3) the policies referred to in Article 3515, as well as the policies of facilitating the orderly planning of transactions, of promoting multistate commercial intercourse, and of protecting one party from undue imposition by the other.
The issue to be resolved under La. C.C. arts. 3515 and 3537 is which state’s policies would be most seriously impaired if its laws were not applied. Zuviceh v. Nationwide Ins. Co., 00-773 (La.App. 1 Cir. *393 5/11/01), 786 So.2d 340, 345, writ denied, 01-2141 (La. 11/9/01), 801 So.2d 373.
In Louisiana, there is a strong public interest in providing full recovery for automobile accident victims who suffer damages caused by a tortfeasor who is not covered by adequate liability insurance. Henson v. Safeco Ins. Co., 585 So.2d 534, 537 (La. 1991). However, the Louisiana Supreme Court has found that other states have an interest in the regulation of the insurance industry conducting business within their borders and in the contractual obligations that are inherent parts thereof. Champagne, 893 So.2d at 788; Walker v. State Farm Mut. Auto. Ins. Co., 42,051 (La.App. 2 Cir. 4/4/07), 954 So.2d 847, 853. In Champagne, the Court indicated that the integrity of the contract is a substantial and real interest. The Court further stated “[t]he fact that Congress has allowed fifty states to have their own uniform system of regulations governing insurance strongly suggests this is a legitimate public purpose.” Champagne, 893 So.2d at 788.
In accordance with Champagne, supra, we must first determine whether there is a difference between Louisiana’s UM law and Texas’ UM law. Our preview of the applicable law in each jurisdiction reveals that there are several differences in the UM provisions. For instance, although Louisiana in La. R.S. 22:1295 and Texas in Tex. Ins. Code § 1952.101 both provide for UM coverage unless rejected by the insured in writing, Louisiana law contains several additional requirements for a rejection form to be valid. See Duncan v. U.S.A.A. Ins. Co., 06-363 (La. 11/29/06), 950 So.2d 544, 551. In Texas, although a rejection is required to be in writing, the statutes do not require a special procedure or special language for the writing. Ortiz v. State Farm Mut. Auto. Ins. Co., 955 S.W.2d 353 (Tex. App.-San Antonio 1997, pet. denied). Execution of a satisfactory written rejection in Texas requires only minimal effort by the insured. Id. Thus, we must conduct a choice of law analysis to ascertain which state’s law should apply to determine the validity of the UM rejection forms in this case.
The record before us reflects that the Progressive insurance policies issued to Mr. Garces-Rodriguez and Mr. Paez were Texas commercial automobile policies, and the insurance agent for each policy lists a Texas address.[2] Mr. Garces-Rodriguez and Mr. Paez provided Florida addresses when obtaining their policies. While plaintiffs contend that the vehicles under each policy were garaged in Louisiana, the policies reflect that they were to be garaged in Texas. There is no showing in the record that Progressive was ever notified of any change in the location where either vehicle was to be garaged.
The accident happened in Louisiana and plaintiffs contend that all medical treatment was obtained in Louisiana. However, there is little information about medical treatment in the record. Mr. Garces-Rod-riguez testified in his deposition 17that he was treated at Kenner Therapy and Rehab in Louisiana for neck and shoulder pain.
*394 Finally, plaintiffs assert that they are Louisiana residents. In his deposition, Mr. Garces-Rodriguez testified that he lived in St. Rose, Louisiana, prior to Hurricane Katrina, but he relocated to Florida after the storm. He testified that he has lived in Florida since 2005, though he came back to Louisiana in 2008 to work. When he came back to Louisiana to work, his family stayed in Florida. Mr. Garces-Rodriguez testified that Mr. Alonso is also from Florida, and he stayed with him in Louisiana when they came for work. He testified that he did not inform his insurer that he moved from Florida to Louisiana to work, because he never moved. He stated that he was living in Louisiana to work but his family and “everything I had” was in Florida. He also stated that his driver’s license was issued in Florida and that he still lives in Florida.
The courts of this state have considered choice of law questions involving UM coverage in different situations and have often found that the state where the insurance policy was issued had a more substantial interest in applying its laws than the state where the accident occurred. In Collins v. Downes, 11-1124 (La.App. 4 Cir. 1/25/12), 83 So.3d 1177, the Fourth Circuit was called to determine whether Louisiana law or Ohio law applied to the interpretation of an insurance policy. In Collins, the accident occurred in Louisiana, the plaintiff and the tortfeasor were from Louisiana, and the tortfeasor’s vehicle was garaged in Louisiana. However, the insurance policy providing UM coverage was issued in Ohio. Even though the accident occurred in Louisiana and involved Louisiana residents, the Fourth Circuit found that Ohio had a more substantial interest in the uniform application of its laws governing insurance contracts than Louisiana. Collins, 83 So.3d at 1183. See also Griffin v. Safeway Ins. Co., 12-1632 (La.App. 1 Cir. 7/29/13), 2013 WL 3947104, in which the First Circuit specifically agreed with the result in Collins.
In Rangel v. Vega-Ortiz, 16-146 (La.App. 3 Cir. 9/28/16), 200 So.3d 1013, the Third Circuit found that even though an automobile accident occurred in Louisiana, Georgia law would apply to determine UM coverage, where the policy was issued in Georgia to a Georgia resident with a Georgia driver’s license. In that case, although it was alleged that plaintiffs husband, Mr. Medina, who died in the accident, was a Louisiana resident, the Court noted that the vehicle’s presence in Louisiana, as well as Mr. Medina’s presence in Louisiana, were unclear in the record. Because the record established multiple contacts with Georgia, the Court found Georgia law applicable. Rangel, supra.
The First Circuit, in Wendling v. Chambless, 09-1422 (La.App. 1 Cir. 3/26/10), 36 So.3d 333, found that although an accident occurred in Louisiana, Mississippi had a more substantial interest than Louisiana in regulating an insurance case involving a Mississippi resident. In Wendling, the plaintiff worked in Louisiana and was regularly in the state, but he was a Mississippi resident who applied for and obtained insurance in Mississippi. The First Circuit found that Mississippi law should apply in that case, where the “application of Louisiana law to the insurance policy would result in the abrogation of a Mississippi contract.” Wendling, 36 So.3d at 339.
In Lee v. Sapp, 14-1047 (La.App. 4 Cir. 3/4/15), 163 So.3d 60, State Farm issued and delivered an insurance policy to the defendant in Florida where he resided. At some point, the defendant moved to Louisiana, and State Farm was aware that he had moved to Louisiana. Thereafter, the defendant was involved in an accident in Louisiana. The Fourth Circuit found that Florida law governed in |9the case, “be *395 cause the contract was issued and delivered in Florida.”[3] Lee, 163 So.3d at 64. See also Rios v. Pierce, 14-730 (La.App. 4 Cir. 1/7/15), 158 So.3d 856, writ denied, 15-256 (La. 4/17/15), 168 So.3d 404.
In the present case, applying the facts before us to the factors for determining choice of law set forth in La. C.C. arts. 3515 and 3537, we find that Texas has a more substantial interest in having its laws applied in this case than Louisiana. While Louisiana has a strong interest in promoting full recovery for innocent automobile accident victims, Texas has a real and substantial interest in regulating its insurance industry and insurance contracts. We note that one of the plaintiffs, Mr. Garcez-Rod-riguez, obtained his insurance policy in Texas, through a Texas insurance agency, and listed a Texas zip code as the location where the vehicle would be garaged. The record does not show that either Mr. Garces-Rodriguez or Mr. Alonso was a permanent resident of Louisiana; rather, Mr. Garces-Rodriguez testified that they were both from Florida but were in Louisiana to work. Considering these and the other factors discussed, along with the applicable law, we find that Texas’ policies would be more seriously impaired if its laws were not applied to determine if the rejections of UM coverage are enforceable in this case. Accordingly, we conclude that Texas law applies in this matter.
Applying Texas law, we find that the forms signed by Mr. Garces-Rodriguez and Mr. Paez were sufficient to validly rejected UM coverage under the Progressive policy. The form signed by Mr. Paez is entitled, “Rejection of Uninsured/Underin-sured Motorist Coverage,” and it provides, in pertinent part: “I have been offered Uninsured/Underinsured Motorist Coverage in an amount equal to the limits of Liability Coverage and I reject the option to purchase and | mUninsured/Underinsured Motorist Coverage.” The form signed by Mr. Garces-Rodriguez is an endorsement providing, in pertinent part: “You further agree that this endorsement will also serve as a rejection of Uninsured/Underinsured Motorists Coverage and Personal Injury Protection Coverage...” Both forms contain the typewritten name of the insured and the insurance policy number. These forms signed by Mr. Garces-Rodriguez and Mr. Paez are written in clear and express terms, indicating their intent to reject UM coverage.
Tex. Ins. Code § 1952.101 requires a rejection of UM coverage to be in writing, but it does not require a special procedure or specific language in order to be effective. See Ortiz, supra at 356. In the present case, we find that both rejections of UM coverage are valid pursuant to Texas law, and there is no UM coverage provided by the Progressive policies to plaintiffs in this matter. Accordingly, we find that the trial court was correct to grant summary judgment in Progressive’s favor, dismissing plaintiffs’ claims against it.
DECREE
For the foregoing reasons, we affirm the summary judgment granted in favor of Progressive, dismissing plaintiffs’ claims against it.
AFFIRMED

. After this appeal was lodged and docketed in this Court, it was determined that the trial *391 court's judgment of April 20, 2015 was deficient because it lacked the requisite decretal language. Particularly, while the judgment indicated that Progressive's motion for summary judgment was "granted,” the specific relief granted, i.e. dismissal of claims, could not be determined from the judgment itself. Consequently, pursuant to our supervisory jurisdiction, this Court ordered the trial court to amend its judgment to specify the relief granted.
On November 7, 2016, the trial court amended its judgment. However, the amended judgment provides that the claims against Progressive filed by both defendants, not plaintiffs, were dismissed with prejudice. On December 5, 2016, noting that the amended judgment was not a final and appealable judgment and thus, our appellate jurisdiction was not properly invoked, this Court again ordered the trial court to amend its April 20, 2015 judgment to include the appropriate and necessary decretal language.
On December 7, 2016, the trial :court signed a second amended judgment, providing that Progressive’s motion for summary judgment as to both plaintiffs is granted, and "the claims against Progressive filed by both plaintiffs dismissed with prejudice.” The record was supplemented with this final judgment on December 8, 2016.

. Plaintiffs complain that the attachments to Progressive’s motion for summary judgment were not certified copies of the insurance documents. At the hearing on the motion for summary judgment, the trial judge allowed the plaintiffs to submit a late opposition to the motion for summary judgment. Based on plaintiffs’ opposition being untimely, the trial court allowed Progressive two weeks to file a reply to the opposition and noted that Progressive was permitted to submit certified copies of its exhibits along with its reply memorandum. We find no error in the trial court’s decision to allow Progressive to submit certified copies of its exhibits after the hearing.

. In Lee, while the Court found that Florida law applied because the contract was issued and delivered in Florida, the Court also found that the terms of the contract issued by State Farm to defendant prevailed over Florida law. 163 So.3d at 64.