| CAMERON SOULE | * | NO. 2022-CA-0352 |
|---|---|---|
| VERSUS | * | |
| | | COURT OF APPEAL |
| WOODWARD DESIGN + BUILD, LLC, EAGLE SCAFFOLDING AND EQUIPMENT COMPANY, INC., EAGLE ACCESS, L.L.C., ABC INSURANCE COMPANY, XYZ INSURANCE COMPANY AND DEF INSURANCE COMPANY | * * | FOURTH CIRCUIT |
| | | STATE OF LOUISIANA |
| | * * * * * * * | |

CONSOLIDATED WITH:                    CONSOLIDATED WITH:

DUANE DEAN, HUSBAND OF/AND            NO. 2022-CA-0353
CHRISTY DEAN

VERSUS

WOODWARD DESIGN + BUILD, L.L.C.,
EAGLE ACCESS, L.L.C., EAGLE
SCAFFOLDING AND EQUIPMENT
COMPANY, INC.

CONSOLIDATED WITH:                    CONSOLIDATED WITH:

MICHAEL HABISREITINGER, JR.           NO. 2022-CA-0354

VERSUS

EAGLE ACCESS, LLC, EAGLE
SCAFFOLDING AND EQUIPMENT CO.,
INC., & WOODWARD DESIGN + BUILD,
LLC

CONSOLIDATED WITH:                    CONSOLIDATED WITH:

JARRELL JONES                         NO. 2022-CA-0355

VERSUS

WOODWARD DESIGN + BUILD, LLC,
EAGLE ACCESS LLD, AND EAGLE
SCAFFOLDING AND EQUIPMENT
COMPANY, INC.

CONSOLIDATED WITH:                    CONSOLIDATED WITH:

MELVIN BARNICA, AMALIA                NO. 2022-CA-0356
FERRETIZ BARRON WIFE OF/AND
CIRIACO PINA, AND FRANCISCO
CASTILLO

VERSUS

**EAGLE SCAFFOLDING AND
EQUIPMENT COMPANY, INC.; EAGLE
ACCESS, LLC; WOODWARD DESIGN +
BUILD, LLC; ABC INSURANCE
COMPANY; XYZ INSURANCE
COMPANY; 123 INSURANCE
COMPANY, AND JOHN DOE**

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2018-00935, DIVISION "F"
Honorable Jennifer M Medley,
* * * * * *
**Judge Karen K. Herman**
* * * * * *
(Court composed of Chief Judge Terri F. Love, Judge Sandra Cabrina Jenkins,
Judge Karen K. Herman)

Joseph S. Piacun
PIACUN LAW FIRM, LLC
1340 Poydras Street
Suite 2100
New Orleans, Louisiana 70112

Bruce C. Dean
DEAN LAW FIRM, LLC
1212 Magistrate Street
Chalmette, Louisiana 70043

William J. Guste, III
GUSTE, BARNETT, SCHLESINGER & ALPAUGH, LLP
639 Loyola Avenue
Suite 2130
New Orleans, Louisiana 70113

COUNSEL FOR PLAINTIFF/APPELLANT: MICHAEL HABISREITINGER, JR

Richard A. Chopin
Justin M. Chopin
THE CHOPIN LAW FIRM, LLC
650 Poydras Street
Suite 1550
New Orleans, Louisiana 70130

COUNSEL FOR PLAINTIFF/APPELLANT: CAMERON SOULE

J. Casey Cowley

CASEY COWLEY, LLC
620 North Carrollton Avenue
New Orleans, Louisiana 70119

COUNSEL FOR PLAINTIFFS/APPELLANTS: MELVIN BARNICA, AMALIA
FERRETIZ BARRON, CIRIACO PINA, & FRANCISCO CASTILLO


Michael S. Brandner, Jr.
Scot P. Koloski
MIKE BRANDNER AND ASSOCIATES, LLC
3621 Veterans Memorial Blvd.
Metairie, Louisiana 70002

COUNSEL FOR PLAINTIFFS/APPELLANTS: BERNARD CURTIS AND
BRENDA CURTIS


Leo J. Palazzo
Jason J. Markey
Mario A. Arteaga, Jr.
PALAZZO LAW FIRM
732 Behrman Highway
Suite F & G
Gretna, Louisiana 70056

COUNSEL FOR PLAINTIFFS/APPELLANTS: CHAD BONDLOW SR.,
INDIVIDUALLY AND ON BEHALF OF HIS MINOR CHILD, CHAD
BONDLOW, JR.


Brian Gerard Shearman
John H. Denenea, Jr.
SHEARMAN-DENENEA, LLC
4240 Canal Street
Second Floor
New Orleans, Louisiana 70119

COUNSEL FOR PLAINTIFFS/APPELLANTS, DUANE DEAN AND CHRISTY
DEAN


Todd Charles Comeaux
COMEAUX LAW FIRM
2354 S. Acadian Thruway, Suite C
Baton Rouge, Louisiana 70808

COUNSEL FOR PLAINTIFFS/APPELLANTS: BERNARD AND BRENDA
CURTIS

Mark E. Morice
MORICE LAW FIRM, LLC
1132 Derbigny Street
Gretna, Louisiana 70053

COUNSEL FOR PLAINTIFF/APPELLANT: PAUL IMBRENDA


Kristopher T. Wilson
Shaundra M. Schudmak
LUGENBUHL WHEATON PECK RANKIN & HUBBARD
601 Poydras Street
27th Floor
New Orleans, Louisiana 70130

COUNSEL FOR DEFENDANT/APPELLEE: THE BURLINGTON INSURANCE
CO.

**AFFIRMED**
**DECEMBER 21, 2023**

KKH
TFL
SCJ

Plaintiffs in these consolidated actions appeal the September 20, 2021 Judgment[1] granting the Re-Urged Motion for Summary Judgment in favor of defendant, The Burlington Insurance Company ("TBIC"). For the reasons set forth below, we affirm.

**STATEMENT OF FACTS AND PROCEDURAL HISTORY**

This appeal arises out of a July 28, 2017 accident at the Standard Condominium construction project ("Project"), when a construction elevator/hoist fell, injuring several workers, including plaintiffs. Woodward Design + Build, LLC ("Woodward") served as the general contractor on the Project. The elevator/hoist was provided by Eagle Access, LLC/Division Management, LLC ("Eagle"), pursuant to a rental agreement and a Subcontract with Woodward.

As required by the owner of the Project, Woodward obtained a Contractor Controlled Insurance Program ("CCIP") policy or "Wrap-Up" policy from Houston Casualty Company ("HCC") for the insurance on the Project. Woodward retained Wrap-Up Insurance Solutions, Inc. as its Wrap-Up Administrator of the CCIP.

---

[1] On September 21, 2021, the trial court signed a duplicate judgment.

1

Eagle's Subcontract with Woodward provides that Eagle agreed to "furnish all labor, equipment, miscellaneous materials, and supervision for MAN/MATERIAL HOIST ERECTION & DISMANTLE," including "[p]reventative maintenance for 12-month rental period." The Subcontract excludes the "bare rental" for the hoist, for which Eagle would provide a separate purchase order.

Regarding insurance, Section 13.1(6) of Eagle's Subcontract states, in pertinent part, that Woodward "has arranged for the Project to be insured under a controlled insurance program (the "CCIP" or "Wrap-Up")." This Section of the Subcontract further provides that the CCIP shall provide "commercial general liability insurance and excess liability insurance, in connection with the performance of the Work at the Project site."

In connection with the accident, plaintiffs filed suit against Woodward, HCC, Eagle, and TBIC, Eagle's own commercial general liability ("CGL") insurer.[2] Defendants also filed cross-claims and/or third-party demands against each other, some of which are still pending.

TBIC denied coverage for Eagle, maintaining that its CGL policy contained an endorsement, or "Wrap-Up Exclusion" which precludes coverage to Eagle for all claims arising from the Project. The Wrap-Up Exclusion, which is central to the issue in this appeal, provides, in pertinent part, that coverage is excluded in "[a]ll locations where you perform or have performed ***work that is or was to be insured under a consolidated (wrap-up) insurance program*** as described below." (Emphasis added).

---

[2] Plaintiffs' lawsuits were consolidated in the trial court.

The following exclusion is added to paragraph 2., Exclusions of COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section I - Coverages):

This insurance does not apply to "bodily injury" or "property damage" arising out of either your ongoing operations or operations included within the "products-completed operations hazard" at the location described in the Schedule of this endorsement, as a consolidated (wrap-up) insurance program has been provided by the prime contractor/project manager or owner of the construction project in which you are involved.

This exclusion applies whether or not the consolidated (wrap-up) insurance program:

(1) Provides coverage identical to that provided by this Coverage Part;
(2) Has limits adequate to cover all claims; or
(3) Remains in effect.

Woodward and HCC previously filed cross-motions for summary judgment seeking to determine whether Eagle was an insured under the CCIP policy. In a judgment rendered December 30, 2020, the trial court granted Woodward's motion and denied HCC's motion, finding that Eagle was insured under the CCIP policy. This Court denied writs. *Soule v Woodward Design + Build, LLCS*, unpub., 2021-0015, (La. App. 4 Cir. 2/3/21).

The Supreme Court reversed, finding that Eagle was not insured under the CCIP policy. *Soule v Woodward Design + Build, LLCS*, 2021-00322 (La. 5/11/21), 315 So.3d 858. Regarding Eagle's involvement in the CCIP, which is pertinent to the issue raised in this appeal, *i.e.*, the application of the TBIC policy Wrap-Up Exclusion, the Supreme Court stated:

> A requirement of the insurance policy Woodward obtained from HCC was that Woodward contract with an approved provider to perform "Contractor Enrollment." Pursuant to this requirement, Woodward retained an approved provider, Wrap Up Insurance Solutions, Inc. ("Wrap Up Administrator"). The Wrap Up Administrator sent an email to Eagle specifically advising that

3

insurance coverage was not automatic and sent the required enrollment form to Eagle.

The Wrap Up Administrator followed up by sending a second email to Eagle after it formally entered into the subcontract with Woodward. Eagle declined to comply with the request, stating that Eagle would "not participate in paying any wrap insurance premiums" as Eagle had its own insurance. Accordingly, the Wrap Up Administrator advised Woodward that Eagle was unwilling to enroll. This information was provided to Woodward's senior project manager, who indicated he did not see any reason to include Eagle because "[t]hey are an equipment supplier and their only on site work is to erect and dismantle the man/material hoist."

Subsequently, after commencing work on the project, Eagle sent an enrollment form to the Wrap Up Administrator. The Wrap Up Administrator advised Woodward of Eagle's action and requested advice on how to proceed. The Woodward representative replied that a decision had been made earlier to exclude Eagle from coverage. Accordingly, on April 24, 2017, the Wrap Up Administrator sent a letter advising Eagle that it was not covered "under the General Liability Contractor Controlled Insurance Program for the trade of Hoist Rental and Service - the Standard Project." A copy of this letter was sent to Woodward. The accident forming the basis of this litigation occurred approximately three months later on July 28, 2017.

*Id.* at pp. 2-3, 315 So.3d at 859.

The Court went on to state:

The undisputed facts demonstrate that this [enrollment] procedure was not followed by Eagle. As a result, the Wrap Up Administrator never issued a certificate of insurance to Eagle and instead sent a letter to Eagle, with a copy to Woodward, advising Eagle it was not covered "under the General Liability Contractor Controlled Insurance Program for the trade of Hoist Rental and Service - the Standard Project."

*Id.* at p. 4, 315 So.3d at 860.

On July 15, 2021, TBIC filed a re-urged motion for summary judgment[3] seeking dismissal of all claims filed against TBIC, asserting that the Wrap-Up Exclusion contained in the CGL policy clearly and unambiguously precludes coverage for Eagle's work on the Project. TBIC

---

[3] TBIC's first motion for summary judgment was denied from the bench on July 23, 2020.

argued therein that the Wrap-Up Exclusion does not require Eagle to be actually enrolled in the CCIP policy in order for the exclusion to apply.

In support of its motion for summary judgment, TBIC introduced: 1) the affidavit of Woodward's CEO, Paul Flower, certifying the CCIP policy, and Woodward's Subcontract with Eagle; 2) the affidavit of TBIC's Regional Claim Manager, Mitchell H. Jacobs, certifying the TBIC policy; 3) the trial court's December 30, 2020 judgment granting Woodward's motion for summary judgment, finding that Eagle was insured under the CCIP policy; and 4) the May 11, 2021 *per curiam* opinion from the Louisiana Supreme Court, reversing the trial court's December 30, 2020 judgment.

Eagle opposed TBIC's motion for summary judgment[4] asserting that the TBIC Wrap-Up Exclusion does not apply to the facts of this case because Woodward specifically excluded Eagle from the CCIP. Thus, Eagle argued that because the CCIP was not actually available to Eagle, the TBIC Wrap-Up Exclusion should not be interpreted to exclude coverage for Eagle. Eagle further argued that the Wrap-Up Exclusion was vague and ambiguous.

In support of its opposition to TBIC's motion for summary judgment, Eagle introduced the following:

Exhibit 1: The affidavit of Eagle's managing member, Eugene R. Sak, stating:

- Eagle and Woodward executed a Subcontract for the erection/dismantling of construction hoists at the Project. The Subcontract provided, at Section 13.1.6 - Insurance, that Woodward arranged for the Project to be insured under the CCIP.

- On March 27, 2017, Karla Harper, with Woodward's Wrap-Up Administrator, e-mailed Eagle, "[i]t is my understanding that you

_____

[4] Plaintiffs did not file an opposition.

5

have been onsite working.  Please complete and return the attached enrollment documents and return immediately so that your work may be covered by insurance."

- The same day, Mr. Sak e-mailed Ms. Harper advising that he did not agree to participate in paying any additional premiums to be included in the CCIP.

- On March 28, 2017, Ms. Harper e-mailed Mr. Sak informing him that enrollment in the CCIP was mandatory, and that the insurance premium was already included in the price of the Subcontract.

- Based on this representation, Eagle completed the CCIP enrollment form and submitted the form to Ms. Harper on April 5, 2017.  Eagle received no request for additional information or further contact from Woodward or the Wrap-Up administrator until after the July 28, 2017 incident.

Exhibits 2 through 5: The affidavit of Cheryl Soares (Corporate Claims Specialist for Network Adjusters, Inc., a third-party administrator for HCC), verifying: 1) Woodward's April 4, 2017 and April 24, 2017 e-mails to Ms. Harper, informing her that Woodward decided to exclude Eagle from the CCIP due to scope of work; and 2) Ms. Harper's April 24, 2017 e-mail to Eagle attaching the Exclusion Letter.

Exhibit 6: Excerpts from HCC's corporate deposition, through Paul Silverman, stating that Eagle's exclusion from the CCIP was based on a decision made by Woodward, not by HCC.

Exhibit 7: A printout from Insurance Coverage of Construction Disputes §41K:1 (2d ed), **Wrap-Up Exclusion** in general.

The matter was brought before the trial court on August 26, 2021, and judgment was rendered September 20, 2021, granting TBIC's re-urged motion for summary judgment, dismissing all claims against TBIC, with prejudice.  The judgment also specifically provided that the TBIC policy issued to Eagle "is clear and unambiguous and does not provide coverage for the claims in this litigation."  Eagle's Motion for New Trial was denied on March 3, 2022.  Plaintiffs' appeal followed.

**LAW AND ANALYSIS**

*Summary Judgment Principles and Standard of Review*

"A summary judgment is reviewed on appeal *de novo*, with the appellate court using the same criteria that govern the trial court's determination of whether summary judgment is appropriate; *i.e.*, whether there is any genuine issue of material fact, and whether the movant is entitled to judgment as a matter of law." *Planchard v. New Hotel Monteleone, LLC*, 2021-00347, pp. 2-3 (La. 12/10/21), 332 So.3d 623, 625 (citations omitted).

The summary judgment procedure is favored; and the procedure "is designed to secure the just, speedy, and inexpensive determination of every action." La. C.C.P. art. 966(A)(2). "After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." La. C.C.P. art. 966(A)(3).

A shifting burden of proof is set forth in La. C.C.P. art. 966(D)(1), which provides:

> The burden of proof rests with the mover. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law.

A genuine issue is one as to which reasonable persons could disagree, "[i]f on the state of the evidence, reasonable persons could reach only one conclusion,

7

there is no need for trial on that issue[,]" and summary judgment is appropriate. *Smith v. Our Lady of the Lake Hosp., Inc.*, 93-2512, p. 27 (La. 7/5/94), 639 So.2d 730, 751. "A fact is material when its existence or nonexistence may be essential to the plaintiffs [sic] cause of action under the applicable theory of recovery; a fact is material if it potentially insures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute." *Chapital v. Harry Kelleher & Co., Inc.*, 2013-1606, p. 5 (La. App. 4 Cir. 6/4/14), 144 So.3d 75, 81 (citation omitted).

"Whether an insurance policy provides for, or precludes, coverage as a matter of law is an issue that can be resolved within the framework of a motion for summary judgment." *Certain Underwriters at Lloyd's of London v Duxworth Roofing and Sheetmetal, Inc.* 2022-0821, p. 7 (La. App. 4 Cir. 7/18/23), 370 So.3d 1144, 1149 (quoting *Wagner v. Tammany Holding Co., LLC.,* 2013-0374, p. 7 (La. App. 4 Cir. 10/9/13), 135 So.3d 77, 82).

***Assignment of Error***

In their sole assignment of error, plaintiffs assert that the trial court erred in granting TBIC's motion for summary judgment because Eagle was not insured under the CCIP policy within the meaning of the Wrap-Up Exclusion contained in the TBIC policy.[5] Plaintiffs maintain that the trial court erred for three reasons, which we will address separately below.

Plaintiffs first argue that Eagle was not insured (and never would have been insured) under the CCIP policy because equipment manufacturers, fabricators and suppliers such as Eagle were expressly excluded from the program. We find no merit in this argument.

_____

[5] Eagle has not filed a brief in this appeal.

As TBIC correctly points out, there is no evidence in the record that Eagle is the manufacturer of the hoist. Additionally, TBIC asserts that the CCIP policy excludes from insured status "suppliers of materials" *but not* suppliers/lessors of equipment, such as Eagle. TBIC supports this argument, citing the "Additional Insured" endorsement contained in the CCIP policy that extends coverage to "any person or organization from whom you [Woodward] lease equipment." TBIC has maintained that the CCIP policy was intended to cover Eagle under two distinct provisions: 1) as a lessor of equipment under the above mentioned "Additional Insured" endorsement;[6] and 2) as an enrolled contractor, (for Eagle's work pursuant to the Subcontract to erect, dismantle, and provide preventative maintenance for the hoist) under the Wrap-Up endorsement. The latter endorsement provides that Woodward's "enrolled contractors" are insured "only while performing duties related to the project."

Second, plaintiffs submit that Eagle was not an insured (and never would have been insured) under the CCIP policy because Woodward expressly excluded Eagle from the program, even if they were otherwise eligible. Plaintiffs continue to assert that the sole reason Eagle never became an insured under the CCIP policy was because Woodward refused to allow Eagle to enroll. However, as noted above, the Supreme Court has stated that Eagle was not insured under the CCIP policy because Eagle did not follow the enrollment procedure. *Soule,* 2021-00322, p. 4, 315 So.3d at 860.

Finally, plaintiffs argue that TBIC's interpretation of the Wrap-Up Exclusion is contrary to the intent of the parties, the plain wording of the

[6] TBIC avers that no court has yet determined whether Eagle was covered by the Additional Insured endorsement that extends coverage to lessors of leased equipment.

9

exclusion, and public policy. Plaintiffs submit that Eagle reasonably believed and intended that the TBIC policy would provide coverage for its work on the Project. Moreover, plaintiffs assert that Eagle paid premiums to both TBIC and Woodward/HCC, yet Eagle could be left uninsured if the Wrap-Up Exclusion is found to be applicable. Thus, plaintiffs assert that equity supports the reasonable interpretation that the Wrap-Up Exclusion only applies if and when the insured *is actually enrolled* in the Project's wrap-up program, not simply when the insured *is eligible to enroll*. As explained below, we do not find plaintiffs' position to be a proper interpretation of the TBIC policy.

### *Interpretation of Insurance Contracts*[7]

In *Bonin v. Westport Ins. Corp.*, 2005-0886 (La. 5/17/06), 930 So.2d 906, the Louisiana Supreme Court summarized the principles for construing insurance policies as follows:

> An insurance policy is a contract between the parties and should be construed using the general rules of interpretation of contracts set forth in the Civil Code. *Cadwallader v. Allstate Ins. Co.*, 02-1637, p. 3 (La. 6/27/03), 848 So.2d 577, 580; *Louisiana Ins. Guar. Ass'n v. Interstate Fire & Casualty Co.*, 93-0911, p. 5 (La. 1/14/94), 630 So.2d 759, 763. The judicial responsibility in interpreting insurance contracts is to determine the parties' common intent. La. C.C. art. 2045; *Louisiana Ins. Guar. Ass'n*, 93-0911 at p. 5, 630 So.2d at 763; *Garcia v. St. Bernard Parish School Board*, 576 So.2d 975, 976 (La. 1991). Words and phrases used in an insurance policy are to be construed using their plain, ordinary and generally prevailing meaning, unless the words have acquired a technical meaning. La. C.C. art. 2047; *Cadwallader*, 02-1637 at p. 3, 848 So.2d at 580; *Carbon v. Allstate Ins. Co.*, 97-3085, p. 4 (La. 10/20/98), 719 So.2d 437, 439.

---

[7] The TBIC policy was issued to Eagle in Alabama. The parties concede that the relevant contract interpretation is the same in both Alabama and Louisiana. Thus, a choice of laws analysis is unnecessary. *See Lee v. Sapp*, 2014-1047, p. 4(La. App. 4 Cir. 3/4/15), 163 So.3d 60, 63 (observing that a "false conflict" exists when "the governing law of each jurisdiction is identical, or so similar that the same result would be reached under either law." When a false conflict exists, "no need exists to determine which state's law applies." *Id*.). Accordingly, we apply Louisiana law.

An insurance policy should not be interpreted in an unreasonable or a strained manner so as to enlarge or to restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion. *Carrier v. Reliance Ins. Co.*, 99-2573, pp. 11-12 (La. 4/11/00), 759 So.2d 37, 43 (quoting *Louisiana Ins. Guar. Ass'n*, 93-0911 at p. 5, 630 So.2d at 763). Unless a policy conflicts with statutory provisions or public policy, it may limit an insurer's liability and impose and enforce reasonable conditions upon the policy obligations the insurer contractually assumes. *Carbon*, 97-3085 at p. 5, 719 So.2d at 440; *Louisiana Ins. Guar. Ass'n*, 93-0911 at p. 6, 630 So.2d at 763.

If after applying the other general rules of construction an ambiguity remains, the ambiguous contractual provision is to be construed against the insurer and in favor of coverage. *Cadwallader*, 02-1637 at p. 3, 848 So.2d at 580; *Carrier*, 99-2573 at p. 12, 759 So.2d at 43-44. Under this rule of strict construction, equivocal provisions seeking to narrow an insurer's obligation are strictly construed against the insurer. *Louisiana Ins. Guar. Ass'n*, 93-0911 at p. 6, 630 So.2d at 764; *Garcia*, 576 So.2d at 976. That strict construction principle, however, is subject to exceptions. *Cadwallader*, 02-1637 at p. 3, 848 So.2d at 580; *Carrier*, 99-2573 at p. 12, 759 So.2d at 43-44. One of these exceptions is that the strict construction rule applies only if the ambiguous policy provision is susceptible to two or more reasonable interpretations. *Cadwallader*, 02-637 at p. 3, 848 So.2d at 580; *Carrier*, 99-2573 at p. 12, 759 So.2d at 43-44. For the rule of strict construction to apply, the insurance policy must be not only susceptible to two or more interpretations, but each of the alternative interpretations must be reasonable. *Cadwallader*, 02-1637 at p. 3, 848 So.2d at 580; *Carrier*, 99-2573 at p. 12, 759 So.2d at 43-44.

*Bonin*, 2005-0886 at pp. 4-6, 930 So.2d at 910-11; *See also Vise v Olivier House Prop. Mgmt., LLC*, 2016-0741, pp. 6-7 (La. App. 4 Cir. 4/12/17), 216 So.3d 157, 161-62.

Regarding an exclusion contained in an insurance policy, this Court has recently reiterated the following:

[A]lthough an insurer can limit its liability if, in so doing, this does not result in a conflict with statutory provisions or public policy, the insurer bears the burden of proof if it claims that a loss falls within a policy exclusion. *Choice Found. v. Law Indus., LLC*, 2021-0431, p. 4 (La. App. 4 Cir. 3/2/22), 336 So.3d 501, 505 (*quoting Perniciaro v. McInnis*, 2018-0113, p. 10 (La. App. 4 Cir. 9/7/18), 255 So.3d 1223, 1231). "[A] provision which seeks to narrow the insurer's obligation

11

is strictly construed against the insurer ...." *Reynolds v. Select Props.*, 1993-1480 (La. 04/11/94), 634 So.2d 1180, 1183 (citing *Garcia v. St. Bernard Sch. Bd.*, 576 So.2d 975, 976 (La. 1991); *Breland v. Schilling*, 550 So.2d 609, 610 (La. 1989)).

*Lewis v State Nat'l Ins. Co., Inc.* 2022-0693, p. 24 (La. App. 4 Cir. 5/19/23), 368 So.3d 653, 668.

With these precepts in mind, we turn to the interpretation of the TBIC policy.

Woodward's Subcontract with Eagle specifically provides that Woodward arranged for the Project to be insured under the CCIP policy to provide coverage for Eagle's work at the Project site. The CCIP policy was issued by HCC. Notwithstanding the reason why Eagle was ultimately not enrolled, the record demonstrates that Eagle was clearly performing work on the Project that *was to be insured* under the CCIP policy. Moreover, the plain language of the Wrap-Up Exclusion states that coverage for Eagle is excluded in "[a]ll locations where you perform or have performed work that is or was to be insured under a consolidated (wrap-up) insurance program . . . " It does not state, as plaintiffs contend, that the exclusion only applies if Eagle was actually enrolled in the CCIP policy.

Plaintiffs also assert that if it was TBIC's intent to preclude coverage simply when a contractor was *eligible* to enroll in a CCIP policy, the Wrap-Up Exclusion could have so stated. However, as our jurisprudence has recognized, "although an exclusion could have been worded more explicitly, it 'does not necessarily deem it ambiguous' ". *Forrest as Tr. for Jack Thrash Forrest III Tr. v. Ville St. John Owner Ass'n, Inc.* 2018-0175, p. 9 (La. App. 4 Cir. 11/7/18), 259 So.3d 1063, 1069 (quoting *Burmaster v. Plaquemines Parish Gov't*, 2010-1543, p. 8 (La. App. 4 Cir. 3/30/11), 64 So.3d 312, 319).

12

Pursuant to our *de novo* review of the record, and applying the well-established principles of contract interpretation, we find, as did the trial court, that the TBIC policy Wrap-Up Exclusion clearly and unambiguously precludes coverage for Eagle's work on the Project.  Accordingly, the Wrap-Up Exclusion must be enforced as written.

## DECREE

For the foregoing reasons, we find no error on the part of the trial court in granting summary judgment in favor of TBIC.  Accordingly, we affirm.

**AFFIRMED**